HOUSING INVESTMENT CORPORATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, SECCIÓN PRIMERA, recurrido.

*Número:* O-80-124          *Resuelto:* 22 de diciembre de 1980

*William J. Riefhkol,* abogado de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La corporación recurrente inició procedimiento de ejecución por la vía ordinaria de hipoteca garantizando un principal de $29,650 distribuido en plazos mensuales de $228.01 por término de treinta años a expirar el 1ro junio, 2005, por haber los deudores Nelson Del Valle y Myriam Matías González dejado de pagar los plazos vencidos desde el 1ro agosto, 1977. A la fecha de radicación de la demanda en 16 enero, 1978 el inmueble gravado por dicho crédito, compuesto de solar de 177.84 m/c y casa vivienda de concreto en la urbanización "El Cortijo", Barrio Minillas, Bayamón, constaba inscrito a nombre de dichos demandados Del Valle-Matías. La acreedora demandante prosiguió la acción civil hasta obtener sentencia el 24 noviembre, 1978 que ordenó la venta del inmueble en pública subasta para satisfacer la deuda. El 3 enero, 1979 la demandante presentó al Registrador recurrido una copia certificada de la demanda y un escrito solicitando anotación de aviso de cuestión litigiosa pendiente a tenor del Art. 91 del Código de Enjuiciamiento Civil de 1933. Para esa fecha la acreedora demandante se había enterado por el Registro de que la propiedad en trámite de ejecución había sido comprada por Héctor L. Ortiz Otero y esposa Delia Nieves Ponce el 17 febrero, 1977 e inscrito su título en el Registro el 12 abril, 1978, (¹) por precio de $31,444.97 de los cuales retuvieron los compradores $29,444.97 para pagar la hipoteca de referencia. Conocido el cambio de titular la demandante les notificó por correo certificado a la dirección de la casa hipotecada

---

(¹) Transcurren 14 meses entre la fecha de compra y su inscripción. Todavía para el 14 marzo, 1978 el Registrador expidió certificación solicitada por la demandante-recurrente haciendo constar que la propiedad estaba inscrita a favor de Nelson Del Valle Sánchez y Myriam Matías González. La demanda se había radicado el 16 enero, 1978.

copias de la sentencia y del edicto de subasta a celebrarse el 30 octubre, 1979, en cuyo texto también citó a dichos nuevos adquirentes. En la subasta la demandante Housing Investment Corp. obtuvo la buena pro y el mismo día el Alguacil de la Sala de Bayamón otorgó venta judicial a su favor, formalizada en la escritura Núm. 110 de 30 octubre, 1979, ante el notario Lic. William J. Riefkohl; y luego por escritura de cesión Núm. 116 otorgada en San Juan el 5 diciembre, 1979 ante el mismo notario, dicha corporación adjudicataria transfirió el dominio del inmueble al Secretario de Vivienda y Desarrollo Urbano de los Estados Unidos en cumplimiento de un seguro de hipoteca bajo el National Housing Act. Estos documentos, así como un mandamiento del Tribunal Superior para cancelación de gravamen posterior fueron presentados al Registro donde su calificación se halla detenida(²) por disposición del Registrador al denegar la anotación de aviso de demanda en nota de 21 febrero, 1980 "por observarse que la finca consta inscrita a favor de Héctor L. Ortiz Otero y su esposa Delia Nieves Ponce, personas distintas a los demandados, tomándose en su lugar anotación preventiva por el término legal de 120 días a favor de la parte demandante . . .". La acreedora ejecutante instó recurso gubernativo.

I

La posición del Registrador es que los nuevos adquirentes del inmueble hipotecado no son compradores *pendente lite* porque su título se remonta al 17 febrero, 1977, anterior a la radicación de la demanda el 16 enero, 1978 por lo que no es de aplicación el Art. 71(³) de la Ley Hipotecaria, 30 L.P.R.A.

---

(²) Se halla pendiente también un mandamiento para cancelación de la anotación de aviso de demanda.

(³) Art. 71.

"Los bienes inmuebles o derechos reales anotados podrán ser enajenados o gravados; pero sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación.

"Si los bienes inmuebles o derechos reales anotados preventivamente, a

sec. 120, en su prevención de que "[s]i los bienes inmuebles o derechos reales anotados preventivamente, a tenor de la sec. 91 de este título, números 2.° y 3.°, fuesen adjudicados al demandante en virtud de sentencia recaída en el pleito, o llegase el caso de anunciarlos en pública subasta, se notificará la adjudicación o el anuncio al que durante el litigio hubiese adquirido tales bienes o derechos"; que no habiéndose incluido a los nuevos titulares esposos Ortiz Otero-Nieves Ponce como demandados en la acción civil, el obstáculo de registro por interrupción del tracto sucesivo ordenado en el Art. 20 de la Ley, 30 L.P.R.A. sec. 45, impide la anotación de la demanda. Tal criterio choca con el principio de que en la ejecución del crédito el acreedor viene obligado por las constancias

---

tenor de la sec. 91 de este título, números 2.° y 3.°, fuesen adjudicados al demandante en virtud de sentencia recaída en el pleito, o llegase el caso de anunciarlos en pública subasta, se notificará la adjudicación o el anuncio al que durante el litigio hubiese adquirido tales bienes o derechos.

"Dicha notificación deberá practicarse a instancia del actor, dictada que sea la sentencia firme de adjudicación o antes de verificarse el remate en el procedimiento de apremio, debiendo observarse lo que prescriben los artículos 260 al 269 de la Ley de Enjuiciamiento Civil vigente en las Antillas, 244 al 253 de la que rige en Filipinas.

"Hecha la notificación a que se refiere el párrafo anterior, podrá el notificado librar los bienes de que se trate, pagando la cantidad consignada en la anotación para principal y costas, sin que se entienda obligado a satisfacer por este último concepto mayor suma que la consignada en la anotación. Si no lo hiciere en el término de diez días, se procederá a cancelar en el registro la inscripción de su dominio, así como cualquiera otra que se hubiera extendido después de la anotación, a cuyo efecto, y a instancia del rematante o del adjudicatario, se despachará el oportuno mandamiento al registrador de la propiedad.

"Si la enajenación otorgada e inscrita durante el pleito fuere relativa a finca cuya propiedad se hubiere reclamado en virtud de demanda anotada preventivamente, con arreglo al número 1.° de la sec. 91 de este título, será título hábil para que en su virtud se cancele aquella inscripción, un testimonio de la sentencia firme favorable al dominio del demandante.

"Las sentencias ejecutorias en que se imponga la pena de interdicción, o se declare la incapacidad para administrar de una persona, o se modifique su aptitud civil en cuanto a la libre disposición de sus bienes, serán documentos bastantes para cancelar las inscripciones de enajenaciones otorgadas durante la tramitación del juicio por el declarado incapaz, siempre que la demanda origen de la providencia hubiere sido anotada preventivamente en virtud de lo que ordena la sec. 91 de este título en su número 5.°."

del Registro, sin que se le imponga la obligación de investigar e identificar, para incluirlos en su demanda, posibles adquirentes ocultos del bien hipotecado. Muy fácil sería frustrar la realización del crédito y con ello disolver la garantía máxima que representa la hipoteca si durante el trámite de ejecución hubiese de mantener el acreedor una operación continua de descubrimiento de traspasos furtivos extrarregistrales del inmueble ejecutado. Los derechos del adquirente *pendente lite*, y más aún su propia condición como tal, a los efectos del citado Art. 71 de la Ley, nacen con la presentación de su título en el Registro o la notificación del traspaso al acreedor, independientemente de la fecha de la operación extrarregistral. La integridad y seguridad de la garantía hipotecaria no serán afectadas por un adquirente como el del caso de autos, que habiendo comprado el 17 febrero, 1977 demoró la inscripción de su título hasta abril de 1978.

Más que la cuestión formal o externa de alegada contravención del Art. 20, (⁴) la denegatoria del Registrador cuestiona la legalidad de los procedimientos seguidos en la ejecución de la hipoteca y hasta qué punto la no inclusión de los nuevos adquirentes como partes en la acción civil afecta el debido proceso de que es también guardador el Registrador de la Propiedad. A dicha cuestión fundamental nos dirigimos porque habiendo terminado la realización del crédito y hallándose presentados la escritura de venta judicial, la de cesión al Secretario federal de la Vivienda y mandamiento para cancelación de un gravamen posterior, la anotación de aviso de

---

(⁴) *"Inscripción previa del derecho de aquel que transfiera o grave el dominio; expropiación*

"Para inscribir o anotar los títulos en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen.

"Los registradores denegarán la inscripción de dichos títulos mientras no se cumpla este requisito, siendo responsables directamente de los perjuicios que causen a un tercero por la infracción de este precepto."

demanda bajo el Art. 91 de Enjuiciamiento Civil ha perdido todo valor de elemento decisional.

La demandante al iniciar la acción civil en ejecución de hipoteca con la presentación de la demanda el 16 enero, 1978 designó demandados en la misma a Nelson Del Valle y Myriam Matías que en esa fecha aparecían en el Registro como dueños del inmueble gravado. A solicitud del abogado de la acreedora, el Registrador expidió certificación dos meses después, el 14 de marzo, 1978, en la que consta que no ha habido cambio en la titularidad registral, por lo que prosigue su acción según instada. A pesar de que los compradores Ortiz Otero y esposa no son en un sentido literal adquirentes *pendente lite*([5]) porque compraron el 17 febrero, 1977, casi un año antes de radicarse la demanda, su título fue inscrito el 12 abril, 1978, tres meses después de comenzado el pleito. Sin embargo, la condición o falta de ella de comprador *pendente lite* es irrelevante a la decisión de este caso porque aparece ampliamente cumplido el propósito de la Ley: brindar a los titulares posteriores razonable oportunidad de intervenir en la subasta y satisfacer antes del remate el importe del crédito con intereses y costas. *Retirement System* v. *Registrador*, 104 D.P.R. 791, 795 (1976). La notificación de la sentencia y edicto de subasta cumplió a cabalidad el propósito de proteger el derecho de unos nuevos adquirentes que desde la escritura de compra de 17 febrero, 1977 se habían reservado la mayor parte del precio acordado con su vendedora Myriam Matías González para enjugar el crédito hipotecario que expresamente asumieron y que dejaron de pagar desde la mensualidad vencida el 1ro agosto, 1977. Un comprador de propiedad gravada con hipoteca que no está en vía de ejecución no puede reclamar más protección de sus intereses que la acordada por el Art. 71 al comprador *pendente lite*, por el simple recurso de posponer a su conveniencia la presenta-

---

[5] *Ramos* v. *Ríos*, 78 D.P.R. 619, 624 (1955).

ción(⁶) de su título en el Registro, de tal modo ocultando del acreedor ejecutante que ha habido un cambio de titular. El acreedor hipotecario ejecutante puede y debe depender del estado que refleja el Registro de la Propiedad e incoar su demanda contra el que allí aparece como titular poseedor del inmueble gravado al comienzo de la acción ejecutoria. Iniciado el pleito, él no viene obligado a hacer inspecciones periódicas del Registro para eliminar o adicionar nuevas partes(⁷) a su demanda según pueda resultar del ejercicio de la facultad dispositiva por su deudor. En reconocimiento a este principio de legalidad, que ampara el interés del nuevo adquirente, sin derrotar el derecho del acreedor, la Ley Hipotecaria de 1979, al igual que la anterior, no exige más del acreedor que lo actuado en este caso por la recurrente Housing Investment Corporation: los nuevos Arts. 125 (30 L.P.R.A. sec. 2414) y 149 (30 L.P.R.A. sec. 2473), que sustituyen el Art. 71 actual, establecen la subrogación del subadquirente en el lugar y grado del deudor quien para hacer valer su derecho podrá tomar la iniciativa (Art. 125); o si hubiere inscrito o anotado con posterioridad a la hipoteca y con anterioridad a la anotación de la demanda podrá descansar en la obligación del ejecutante de citarlo para la subasta (Art. 149); en todo caso sin paralizar el curso del procedimiento (Art. 175 del Reglamento).

En *Sanquírico* v. *Registrador*, 44 D.P.R. 326, 328 (1932), un caso de ejecución de hipoteca por la vía ordinaria en que el tercer poseedor inscribió su título antes de iniciarse

---

(⁶) Los esposos Héctor L. Ortiz Otero y Delia Nieves Ponce compraron el bien hipotecado a Myriam Matías González por escritura Núm. 17 otorgada en San Juan el 17 febrero, 1977 ante el notario Lic. Adolfo García Rodríguez que no fue presentada al Registro hasta el 6 abril, 1978 e inscrita el 12 abril, 1978.

(⁷) En *Ferrer* v. *Registrador*, 44 D.P.R. 277, 280 (1932), un caso de ejecutivo sumarísimo, dispensamos la notificación del requerimiento de pago a un acreedor posterior, considerando bastante una notificación de los procedimientos "por lo que pueda interesarle para la protección de sus derechos".

el pleito, resolvió este Tribunal que tanto en el ejecutivo sumario como en la demanda civil ordinaria "la acción debe seguirse contra la persona que sea dueña de la finca según el registro al tiempo de comenzarse el procedimiento por disponerlo así taxativamente el Art. 129 de la Ley Hipotecaria [30 L.P.R.A. sec. 225] . . .". El comprador de una finca afecta a hipoteca debidamente registrada es un subrogado del deudor trasmitente, la continuación de su personalidad, conocedor de y obligado por los términos y condiciones que aparecen del Registro, e informado de la cercana ejecución por los edictos de subasta. No es, por tanto, un tercero a quien en todo caso haya que emplazar y vencer en juicio, sino el "subrogado en lugar del causante" con quien, sin paralizar el curso del expediente, se entenderán las diligencias ulteriores. Arts. 129 de la Ley y 175 del Reglamento Hipotecario, (8) 30 L.P.R.A. secs. 225 y 1096; *Arroyo* v. *Zavala*, 40 D.P.R. 269, 275 y ss. (1929). La notificación a los adquirentes de la finca gravada, cumplida en este caso mediante correo certificado y publicación de edictos de subasta satisface el principio de tracto sucesivo del Art. 20 de la Ley.

## II

Como se ha relatado, el Registrador rehusó calificar la escritura de venta judicial a favor de la acreedora Housing Investment Corp., la cesión por ésta al Secretario de Vivienda

---

(8) Art. 129 Ley—*Finca en manos de un tercer poseedor.*

"Si antes de que el acreedor haga efectivo su derecho sobre la finca hipotecada pasare ésta a manos de un tercer poseedor, se entenderán directamente con éste todas las diligencias prevenidas en la sección anterior, como subrogado en la personalidad del deudor."

Art. 175 Reglamento—*Suspensión de los procedimientos.*

". . . . . . . .

"Si durante la sustanciación del expediente pasare la finca o alguna de las fincas hipotecadas a manos de otro poseedor, éste, acreditando la inscripción de su título, podrá pedir que se le exhiban los autos de la escribanía, y el juez acordará, sin paralizar el curso del expediente, entendiéndose con él las diligencias ulteriores, como subrogado en el lugar del causante."

y Desarrollo Urbano de los Estados Unidos, y un mandamiento sobre cancelación de gravamen posterior, dando como razón para no calificar que debía esperar a que se subsanara el defecto de Art. 20 en la solicitud de aviso de demanda bajo el antiguo Art. 91 del Código de Enjuiciamiento Civil.(⁹) Entre la presentación de dicho aviso en el Registro el 3 enero, 1979 y la denegación de su anotación por el Registrador el 21 febrero, 1980 transcurrió más de un año dentro del cual se completó la realización del crédito hipotecario y se adjudicó el inmueble a la recurrente, por lo que dicho aviso de demanda, con naturaleza esencial de medida cautelar accesoria para notificar el inicio de la acción judicial, perdió toda utilidad, suplantada por la notificación por correo certificado y convocación en los edictos de subasta de las partes con interés en la ejecución de la hipoteca. Y como si no bastara esta reducción a *functus officio* del aviso de demanda, está presentado en el Registro, como complementario, un mandamiento judicial para cancelación del referido aviso.

Erró el Sr. Registrador al darle valor de elemento integral de tracto sucesivo a una instancia accesoria y caduca y al negarse a calificar los títulos de ejecución, venta judicial y cesión. El recurso gubernativo procede contra la negativa del Registrador a calificar documentos presentados al Registro, como lo demuestra la inclusión de dicho recurso en el Art. 18 de la Ley, 30 L.P.R.A. sec. 43, como remedio exclusivo contra la suspensión o denegación de inscripción, luego de destacar la obligación de los registradores de calificar "bajo su responsabilidad la legalidad de las escrituras en cuya virtud se

---

(⁹) Dice la nota del Registrador:

"Denegada la anotación de demanda solicitada por observarse que la finca consta inscrita a favor de Héctor L. Ortiz Otero y su esposa Delia Nieves Ponce, personas distintas a los demandados, tomándose en su lugar anotación preventiva por el término legal de 120 días a favor de la parte demandante. Al margen de la insc[ripción] 4ta. folio 103 v[uel]to tomo 861 de Bayamón, finca #38,594. Bayamón a 21 de febrero de 1980."

solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas". ([10])

■ En *Jiménez* v. *Registrador*, 62 D.P.R. 547, 548 (1943), se sostiene que procede el recurso gubernativo cuando el Registrador deja de *calificar*. Así ha de ser, porque negarse a calificar es la más radical y absoluta forma de denegar o suspender la inscripción y expresa infracción del mandato formulado en el citado Art. 18. El propio artículo veda la vía judicial, negando a los jueces y tribunales poder para obligar en otra forma a los registradores a que inscriban o anoten los títulos presentados. La negativa del Registrador a calificar es materia típica de la jurisdicción gubernativa, porque esa negativa, bien o mal fundada, en efecto cierra el Registro a la parte interesada en la inscripción, el mismo desenlace de la denegatoria y la suspensión. Consistentes con dicho principio resolvimos en *Rivera* v. *Registrador*, 74 D.P.R. 127, 132 (1952), que una nota del Registrador que aunque así no lo exprese, como cuestión de hecho deniegue la inscripción solicitada, está sujeta a ser revisada gubernativamente. *Autoridad de Tierras* v. *Registrador*, 65 D.P.R. 513 (1945). La negativa del Registrador a practicar operación alguna en el Registro, equivale prácticamente a la denegación de la inscripción, contra la que procede el recurso gubernativo. *Autoridad de Fuentes Fluviales* v. *Registrador*, 71 D.P.R. 847, 850 (1950); *cf. Castro Lund* v. *Registrador*, 102 D.P.R. 295, 305 (1974).

La amplitud del recurso gubernativo está ordenada en el Art. 112 del Reglamento, 30 L.P.R.A. sec. 992, como que procederá en todos los casos en que el Registrador suspenda o deniegue la inscripción o anotación, *cualquiera que sea la causa*. A igual efecto, véanse Arts. 76 y 78 de la nueva Ley.

---

([10]) Este deber del Registrador de calificar bajo su responsabilidad "la legalidad de los *documentos de toda clase* en cuya virtud se solicite un asiento" queda reiterado en el equivalente Art. 64 de la Ley Hipotecaria de 1979. (Bastardillas nuestras.) 30 L.P.R.A. sec. 2267.

■ La jurisdicción gubernativa de este Tribunal, a falta de una Dirección General de Registros con esa facultad, es de amplia competencia para una vez el recurso esté propiamente ante nuestra consideración, conocer de y resolver de un todo el conflicto registral, ilustrando tanto al recurrente como al Registrador sobre cuál sea el curso registral correcto de los documentos pendientes de inscripción. Con ese método preceptivo aligeramos la solución total de la discrepancia, le impartimos eficacia a nuestra intervención; y nada malo hay en que evitemos una segunda o tercera confrontación entre parte y Registrador. Si desacreditada está la decisión fragmentaria en revisión, no se justifica incorporarla a la jurisdicción gubernativa de ámbito preceptivo irrestricto.

Este Tribunal ha orientado su doctrina hacia el uso más efectivo de su jurisdicción gubernativa, quitándole trabas que en el pasado inmovilizaban todo nuestro sistema procesal. Así, hemos sostenido que no obstante lo ordenado en 30 L.P.R.A. sec. 1771 al efecto de que no es en su alegato, sino en la nota al pie del documento que deberá el Registrador exponer los motivos legales de su denegatoria o suspensión, el Tribunal considerará en todos sus aspectos las cuestiones planteadas, si existen circunstancias especiales que lo ameritan. *Valentín* v. *Registrador*, 61 D.P.R. 218, 220 (1942); *Grillo* v. *Registrador*, 62 D.P.R. 679, 684 (1943), y casos allí citados. Se ajusta esta norma a la diferencia esencial entre nuestras decisiones gubernativas y nuestra jurisprudencia.([11]) ". . . En múltiples ocasiones, a pesar de que la exis-

---

([11]) ". . . La naturaleza del procedimiento de calificación registral de los documentos que pretenden su inscripción debe catalogarse en la órbita de los actos de jurisdicción voluntaria, y la Dirección, que, como simple órgano de alzada, interviene en esta calificación, desenvuelve una actividad de análoga naturaleza. No invade el campo de los Tribunales, ni sienta doctrina legal que pueda servir de base a la casación, sino que resuelve, como órgano administrativo de jurisdicción voluntaria, un problema de derecho, de juego constitutivo y trascendencia *erga omnes*, limitada al solo efecto de inscribir, denegar o suspender el asiento solicitado." Roca Sastre, *Derecho Hipotecario*, 6ta ed., T. II, pág. 306.

tencia de defectos reconocidos por las partes, o fijados por el mismo Centro Directivo, podría excusar la resolución de otros puntos cuestionables, puestos de relieve en la calificación recurrida, la indicada Dirección continúa su examen, no como si se tratara de conclusiones académicas, sino para sentar los jalones de la futura titulación." Jerónimo González y Martínez, *Estudios de Derecho Hipotecario y Derecho Civil*, ed. 1948, T. 1, pág. 219.

Al abogar por el desarrollo de la utilidad práctica y justa del Derecho de cosas, recomienda Jerónimo González: ". . . El Derecho Científico debe quebrantar, en primer término, las barreras levantadas por la ignorancia hipotecaria, presentar el sistema como mantenido por las columnas de la justicia y de la utilidad, y llevar al fondo de la conciencia popular la idea de que sus principios y deducciones atienden a la triple finalidad de asegurar la propiedad y los derechos reales, publicar los gravámenes que ligan a las fincas y movilizar el valor del suelo." *Estudios, op. cit.*, pág. 220.

La indebida restricción de la jurisdicción gubernativa de este Tribunal, además de recortar su utilidad, va contra la naturaleza jurídica de este tipo de recurso, y contra la norma general de usar la competencia de los organismos de decisión para resolver, y no para posponer decisiones.

Nuestra jurisdicción gubernativa se activa por recurso contra denegatoria o suspensión de la inscripción, y aunque no había que decirlo, por obvio, contra la negativa del Registrador a calificar, y así lo tiene declarado este Tribunal en *Jiménez* v. *Registrador*, supra. El recurso gubernativo es una simple incidencia de la calificación y tiene el carácter propio de los actos de jurisdicción voluntaria. No hay que confundir su esencial naturaleza con la acción judicial contenciosa ni la alzada administrativa.

Dicha jurisdicción y competencia tiene la extensión que en el Derecho inmobiliario español se confiere a la Direc-

ción General de los Registros y del Notariado. Una vez la cuestión registral llega a este Tribunal por el cauce señalado en 30 L.P.R.A. secs. 1771–72, el Tribunal tiene amplia facultad para pasar y decidir sobre cualquier área relativa a la calificación de los documentos afectados; y no debe rehuir su acción supervisora del Registro de la Propiedad reservando su criterio de calificación, especialmente en aspectos que trascienden la particular operación de registro objeto del recurso, y en los que nuestra preceptiva sentará pauta a seguir en todas las secciones del Registro y del notariado en general. Recuérdese que actuamos en un campo de jurisdicción voluntaria, análogo al de la Dirección General que no tenemos en Puerto Rico; y que la naturaleza jurídica del recurso gubernativo participa de la misma naturaleza de la calificación, tiene el carácter propio de los actos de jurisdicción y es simple proyección o incidencia de la facultad calificadora. Roca Sastre, *Derecho Hipotecario*, T. II, pág. 293 y ss.

En Resolución de 22 junio, 1922 la Dirección General, sintiéndose limitada por el entonces vigente Art. 124 del Reglamento español, entendió que no mediando la calificación no cabe el recurso, pero a renglón seguido rechaza esa posición y declara el documento inscribible, invocando "la solidaridad con que todos los organismos del Estado deben concurrir al mejor servicio público" y que la Dirección debe contribuir "a que los asientos en los libros se acomoden a las normas generales y particulares exigidas por la Ley y el Reglamento". En Puerto Rico no hay obstáculo a tan bien fundada conclusión porque nuestra Ley no tiene el equivalente del antiguo Art. 124 citado, y por el contrario, el Art. 112 del vigente Reglamento, 30 L.P.R.A. sec. 992, dice que procederá el recurso en todos los casos en que el Registrador suspenda o deniegue "cualquiera que sea la causa". De modo que hace 58 años la jurisprudencia hipotecaria de España descartó la objeción declinatoria de jurisdicción, aun cuando para ello hubo

de superar un obstáculo del reglamento que en nuestra Ley no existe. (¹²)

La jurisdicción voluntaria se ejerce libre de trabas y contrapesos que en la civil contenciosa sirven el propósito de proteger a partes adversativas. Su flexibilidad aprovecha al recurso gubernativo librándolo de la rigidez que derrota su utilidad y merma su eficacia de vehículo ilustrativo y de dirección del Registro de la Propiedad. La doctrina científica hipotecaria no necesitó de la corriente contemporánea que impulsa la solución justa, rápida y económica, para en este caso usar la jurisdicción y competencia para resolver, en vez de posponer.

■ La jurisdicción voluntaria en que cobra eficacia el recurso gubernativo es por tanto, una de índole lectiva dirigida a beneficiar la operación práctica del Registro de la Propiedad con la interpretación que este Tribunal haga de las cuestiones que directa o indirectamente suscita el recurso. No quiere esto decir que en todo recurso el Tribunal examinará áreas que rebasan los fundamentos de suspensión de la inscripción según consignados en la nota del Registrador, pero sí que penetrará al campo de calificación, más allá del cubierto por la nota denegatoria, cuando a su juicio así lo requiera la solución justa, rápida y económica del problema registral en toda la dimensión que alcanzan los principios de derecho hipotecario aplicables. Así lo tiene declarado este Tribunal en *Grillo* v. *Registrador*, supra, cuando dijimos que "circunstancias especiales" requieren la consideración del caso en "todos sus aspectos".

---

(¹²) El Art. 78 de nuestra Ley Hipotecaria de 1979 propicia la flexibilidad y mayor ámbito del recurso al ordenar:

"*Confirmación o revocación por el Tribunal Supremo*

"El Tribunal Supremo resolverá lo que estime ajustado a derecho y, en su consecuencia, decidirá si confirma o revoca la calificación del Registrador.

"El Tribunal Supremo podrá solicitar del Registrador concernido que le remita una certificación de cualesquiera asientos y documentos relacionados con el asunto y que obren en el Registro." 30 L.P.R.A. sec. 2281.

## III

Sin embargo, no hay que llegar al límite de nuestra jurisdicción gubernativa para resolver este recurso. Habiendo resuelto que la tardía inscripción de su título por el segundo adquirente no plantea obstáculo de registro para la anotación de demanda bajo el Art. 91 del anterior Código de Enjuiciamiento Civil, que es el punto suscitado en la nota del Registrador, y apareciendo, además, que fue esa la razón por la cual el Registrador pospuso la calificación de los documentos de adjudicación y trasmisión del inmueble ejecutado, sólo resta ordenar al Registrador que proceda a calificar dichos documentos detenidos.

*Se revocará la nota del Registrador en cuanto detiene la calificación de la escritura de venta judicial, la de cesión al Secretario federal de la Vivienda y los demás presentados por la recurrente, cuyos documentos deberá calificar el Registrador desde luego y de modo consistente con lo aquí resuelto.*

El Juez Asociado Señor Torres Rigual emitió opinión disidente a la cual se unen los Jueces Asociados Señores Martín y Negrón García.

—O—

Opinión disidente del Juez Asociado Señor Torres Rigual a la cual se unen los Jueces Asociados Señores Martín y Negrón García.

San Juan, Puerto Rico, a 22 de diciembre de 1980

Disiento respetuosamente de la opinión del Tribunal, porque creo que actuó correctamente el Registrador recurrido al denegar la anotación de *lis pendens* solicitada por el recurrente. Su nota denegatoria, por tanto, debe ser confirmada. Siendo esa la única nota extendida por el Registrador, el Tribunal no tiene jurisdicción para considerar la procedencia de la inscripción de los títulos posteriormente presentados y que aún no han sido calificados.

El principio de tracto sucesivo estatuido en el Art. 20 de la Ley Hipotecaria, 30 L.P.R.A. sec. 45, es fundamental para la efectividad de los demás principios registrales, especialmente los de la fe pública y legitimación, y no debe ser sacrificado en aras de la economía procesal.(¹) El tracto es de estricto cumplimiento no sólo cuando se trata de actos de transmisión y gravamen otorgados voluntariamente, sino de igual forma respecto de los de carácter forzoso derivados de los procedimientos judiciales o administrativos de apremio o ejecución. Vázquez Bote, *Elementos de Derecho Hipotecario Puertorriqueño*, París-Londres-Caracas, Ed. Lex, 1973, pág. 288; Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, Vol. II, pág. 340. Por consiguiente, para la anotación de un aviso de pleito pendiente, es necesario que al momento de ser solicitada la nota aparezcan los bienes inscritos a nombre de la persona contra quien la pretensión judicial va dirigida. Así lo ha resuelto este Tribunal hace más de medio siglo en *Boerman* v. *El Registrador de San Juan*, 31 D.P.R. 732 (1923), y en el mismo sentido se pronuncia la doctrina, tanto nuestra como extranjera. Véanse: Toledo Álamo, *De la previa inscripción*, 5 Rev. Jur. U.P.R. 429, 442 (1936); Morell y Terry, *Comentarios a la Legislación Hipotecaria*, 2da ed., Madrid, Ed. Reus, 1928, T. 3, pág. 80 y ss.; Roca Sastre, *op. cit.*, T. II, pág. 341; T. IV-1°, pág. 55.

La instancia en que se solicita la anotación de pleito pen-

---

(¹) El Art. 20 dispone en lo pertinente:

"Para inscribir o anotar los títulos en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen.

"Los registradores denegarán la inscripción de dichos títulos mientras no se cumpla este requisito, siendo responsables directamente de los perjuicios que causen a un tercero por la infracción de este precepto . . . ."

La cita, por supuesto, es a la anterior Ley Hipotecaria, vigente al momento de suscitarse la controversia de autos. En el transcurso de la opinión, al igual que aquí, hacemos exclusiva referencia a las disposiciones estatutarias anteriormente en vigor.

diente en el caso de autos fue presentada al Registro cuando la finca constaba inscrita a nombre de personas que no eran parte en la acción de la cual se quería dar aviso. El hecho de que los titulares registrales hubiesen inscrito su dominio en fecha posterior a la del inicio del pleito que pretendía anotarse resulta totalmente impertinente. El principio de tracto sucesivo tiene carácter formal, por lo que la calificación, a tales efectos, solo atiende al momento en que se ha de verificar la operación registral. Roca Sastre, *op. cit.*, Vol. II, pág. 332 y ss. Siendo ello así, el Art. 20 de la Ley Hipotecaria claramente impedía la anotación solicitada. La nota denegatoria del Registrador estuvo plenamente justificada y, por tanto, debe ser confirmada.

No obstante, el Tribunal no solo hace caso omiso al principio de tracto sucesivo, sino que, apartándose de firmes y reconocidos principios registrales, legitima lo que para todo fin práctico equivale a una calificación preliminar de los títulos posteriormente presentados. En cuanto a éstos, el Registrador se limitó a informar a la recurrente, mediante carta dirigida a su abogado, que dichos documentos estaban "pendientes de ser calificados por razón de que el documento que le da tracto al mismo [*sic*] . . . ha sido denegado en el día de hoy y hasta tanto se resuelva el defecto del que adolece dicho documento no podrán despacharse los antes mencionados". ([2])

---

([2]) La carta del Registrador lee en su totalidad como sigue:
"Estimado compañero:
"Le notifico que los documentos presentados a los asientos 76 del diario 596 que lo es la escritura #110 del 30 de octubre de 1979 ante William J. Riefkhol; al asiento 334 del diario 597 la escritura de cesión #116 del 5 de diciembre de 1979, ante el mismo notario y al asiento 556 del diario 597 Mandamiento de fecha 19 de diciembre de 1979 expedido en el Tribunal Superior de P.R., Sala de Bayamón, caso civil #78-113 sobre cancelación de gravámenes posteriores, están pendientes de ser calificados por razón de que el documento que le da tracto al mismo, presentado al asiento 294 del diario 578, ha sido denegado en el día de hoy y hasta tanto se resuelva el defecto del que adolece dicho documento no podrán despacharse los antes mencionados."

Como se sabe, desde principios de siglo ha sido doctrina de este Tribunal, que, no siendo posible la calificación de un documento por nosotros en primera instancia, *Bartolomei* contra *El Registrador de la Propiedad*, 2 D.P.R. 589, 591 (1902), no constituye actuación revisable mediante recurso gubernativo la devolución de un documento, sin haberse practicado su calificación ni operación registral alguna, puesto que sin esa calificación, sencillamente no hay base para la resolución del recurso. *González* v. *El Registrador*, 19 D.P.R. 1067 (1913). En el caso de autos, el Registrador no ha devuelto los documentos exponiendo mediante nota las razones para la devolución y tampoco ha practicado operación alguna en el Registro, limitándose meramente a expresar por carta al recurrente su intención de posponer la calificación de dichos documentos. No es posible equiparar esta carta informal con la nota fundada y completa que exige la ley que se extienda al pie del documento presentado. Sec. 1ra, Ley de Recursos Gubernativos, 30 L.P.R.A. sec. 1771;[3] *Morales Morales* v. *Registrador*, 89 D.P.R. 811, 813 (1964) ; *Monserrate* v. *Registrador de Guayama*, 31 D.P.R. 640, 641 (1923) ; *Merly Et Al.* v. *El Registrador*, 22 D.P.R. 417, 425 (1915).

Tampoco procede sostenerse que en un recurso propiamente interpuesto, como el de autos, sea lícito revisar, en adición a la nota recurrida, una mera *carta* que, además, se refiere a documentos distintos a aquel cuya debida calificación y denegación por el Registrador —la instancia en que se solicita la anotación de *lis pendens*— sirvió de base al recurso. Por consiguiente, creo que no está propiamente planteada ante el Tribunal la cuestión relativa a la posible falta de tracto sucesivo de los documentos posteriormente presentados. Co-

---

[3] Dispone dicha sección lo siguiente:

"Cuando el registrador deniegue o suspenda alguna inscripción, anotación o cancelación, *expondrá al pie del documento, clara y concisamente,* los motivos legales de su negativa y de ella notificará al interesado, quien firmará la notificación." (Énfasis suplido.)

mete error el Tribunal, por tanto, al entrar a considerar dicha cuestión.

Ante la posición adoptada hoy por el Tribunal, de asumir jurisdicción para revocar una simple comunicación del Registrador, que no constituye una operación registral, me veo obligado a señalar la naturaleza especial del recurso gubernativo que se rige por los requisitos formales y técnicos del Derecho hipotecario y que no permite al Tribunal valorar la justicia del caso, como es propio hacerlo en los recursos de revisión y de apelación. Véase opinión disidente del Juez Martín a la que uní mi voto en *Junta de Retiro para Maestros* v. *Registrador*, 109 D.P.R. 569 (1980). De primera intención puede causar extrañeza el que demos preferencia en estos recursos administrativos al rigor de la norma antes que a la justicia sustancial, ya que, de ordinario, la función revisora se funda en el más alto fin de hacer justicia. Pero tal impresión se desvanece cuando tenemos presente que ésta es un área del derecho en que el objetivo no es hacer justicia, sino velar por el estricto cumplimiento de una ley rigurosamente técnica. Tenemos la responsabilidad de descargar esta función escrupulosamente, con fidelidad al mandato legislativo de preservar la claridad y certeza del Derecho hipotecario, supuestos esenciales para la garantía del tráfico registral. La decisión del Tribunal en el día de hoy falla penosamente en el cumplimiento de este importante deber.

Por las razones anteriormente expuestas, confirmaría la nota denegatoria aquí recurrida, sin expresión alguna en cuanto a si procede o no la toma de razón de los documentos posteriormente presentados y pendientes de calificación.