El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
El Centro de Recaudación de Ingresos Municipales (CRIM) nos solicita que ordenemos a la Hon. Lourdes M. Bobé Santiago, Registradora de la Propiedad (Registradora), la calificación de una escritura pública. Debido a que no nos encontramos ante una calificación final, ni ante una verdadera negativa a calificar, procede desestimar el recurso por falta de jurisdicción.
I
El CRIM argüye que Intel Puerto Rico, Inc. otorgó la Escritura número 6 de 11 de mayo de 1995 sobre Cancelación de Condiciones Restrictivas, Segregación, Permuta y Agrupación (Escritura núm. 6) ante el notario Esteban R. Bengoa Becerra, mediante la cual, entre otras cosas, agrupó las fincas 9,316, 9,318, 9,322, 9,323, 9,324, 9,325 y 9,625. Según alegado, la Escritura núm. 6 fue presentada *946 en el Registro de la Propiedad el 1 de agosto de 2000. Aunque esta Escritura es el eje central de la controversia ante nos, no fue anejada como parte del Recurso Gubernativo.
Posteriormente, y como parte de una transacción con una de sus entidades afiliadas, Intel Puerto Rico, Inc., transfirió el dominio de las fincas agrupadas a Intel Puerto Rico, Ltd. Luego de esta transferencia de dominio, Intel Puerto Rico, Ltd. vendió las fincas a IATG Puerto Rico, LLC (IATG) mediante la Escritura de compraventa número 28 de 10 de octubre de 2003 ante la notaría Doira Díaz Rivera.(1) Recurso Gubernativo, pág. 4. Para poder inscribir en el Registro de la Propiedad el título que se alega que IATG posee, el principio de tracto exige la inscripción previa de la Escritura núm. 6 presentada por Intel Puerto Rico, Inc.
El 22 de diciembre de 2011, el CRIM presentó ante el Tribunal de Primera Instancia, Sala Superior de Humacao, una acción en cobro de contribuciones sobre la propiedad inmueble en contra de IATG, con relación a las fincas regístrales 9,316, 9,318, 9,322, 9,323, 9,324, 9,325, 9,327, 9,625, 9,987-A, 10-210 y 11-409. Posteriormente, las partes suscribieron una Solicitud de Sentencia por Estipulación en la que IATG consintió a la venta en pública subasta de las fincas para satisfacer el pago de la deuda en concepto de impuestos sobre la propiedad inmueble. Apéndice, págs. 57-60. El tribunal acogió la solicitud de estipulación que presentaron las partes, e impartió una sentencia que es final y firme. Apéndice, págs. 61-62.
El CRIM plantea que se reunió con la Registradora, a través de uno de sus representantes legales, para inquirir sobre el estatus de la calificación de la Escritura núm. 6. El CRIM le dio seguimiento a esa reunión a través de una carta con fecha de 2 de octubre de 2014. Apéndice, págs. 70-71. En esa carta, el CRIM esbozó que “[n]uestro ase *947 sor legal externo nos informa haber tenido una productiva reunión con usted el pasado 26 de agosto [de 2014], donde le expresó que calificaría la escritura de epígrafe a la brevedad posible”. Apéndice, pág. 71. Posteriormente, el CRIM envió una segunda misiva en la que expuso esencialmente lo mismo. Apéndice, pág. 72. En respuesta a esa segunda misiva, la Registradora se comunicó telefónicamente con el Director Ejecutivo del CRIM. Según lo alegado, en ese intercambio, la Registradora informó sobre su “negativa a calificar” la Escritura núm. 6. Apéndice, págs. 73-74. No obstante, y sin especificar el momento, el CRIM alega igualmente que la Registradora le informó a su Subdirector Ejecutivo que la Escritura núm. 6 podría adolecer de “defectos subsanables”, tales como la falta de documentos complementarios. Recurso Gubernativo, pág. 5 esc. 15.
En vista de los obstáculos para inscribir la Escritura núm. 6, la Registradora le recomendó al Director Ejecutivo del CRIM que ejecutara la hipoteca legal tácita que grava las fincas. Finalmente, el 6 de febrero de 2015, el CRIM presentó un Recurso Gubernativo ante este Tribunal.
II
 A. El Art. 76 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria) dispone que “[t]odo interesado podrá recurrir ante el Tribunal Supremo de Puerto Rico contra la calificación final del documento hecha por el Registrador denegando el asiento solicitado”. (Enfasis suplido). 30 LPRA sec. 2279. En su escrutinio, este Tribunal examinará “la existencia o no de las faltas aducidas”. (Cita omitida). Acosta v. Registrador, 159 DPR 626, 631 (2003).
El ámbito de calificación del Registrador se encuentra delimitado por el Art. 64 de la Ley Hipotecaria, 30 LPRA see. 2267. Ese artículo dispone que la calificación *948 comprenderá “las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, los asientos regístrales vigentes y las leyes”. Véase, además, Rigores v. Registrador, 165 DPR 710, 720 (2005). En el desempeño de su función calificadora, el Registrador dispone de un plazo para calificar que se encontraba dispuesto originalmente en el Art. 52 de la Ley Hipotecaria, 30 LPRA sec. 2255.
El término impuesto por la Ley Hipotecaria constaba de sesenta días contados a partir de la presentación del instrumento público ante el Registro de la Propiedad. El Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, Reglamento Núm. 2674 de 9 de julio de 1980, según enmendado, Departamento de Justicia, (Reglamento Hipotecario Núm. 2674), disponía que en el caso de incumplimiento con dicho plazo para calificar, se podía presentar una queja contra el Registrador y, en caso de ser necesario, ante el Director Administrativo del Registro de la Propiedad (Director Administrativo). Véase L.R. Rivera Rivera, Derecho registral inmobiliario puertorriqueño, 3ra ed., San Juan, Jurídica Editores, 2012, págs. 276-277. Ese procedimiento permitía que el Director Administrativo investigara y decidiera la acción pertinente relacionada con una tardanza del Registrador que se considere injustificada; como por ejemplo, ordenarle al Registrador que tome la acción correspondiente. Véase Art. 66.3 del Reglamento Hipotecario Núm. 2674, supra, pág. 29. Por analogía, en cuanto al plazo para recalificar, hemos señalado el mismo remedio reglamentario. SLG Pérez- Rivera v. Registradora, 189 DPR 729, 740-741 (2013). Véase, además, Algarín v. Registrador, 110 DPR 603, 609 esc. 2 (1981).
Ahora bien, el 27 de diciembre de 2010 se aprobó la Ley Núm. 216-2010 (30 LPRA see. 1821 et seq.) para alivia *949 nar el atraso en la inscripción de títulos en el Registro de la Propiedad. Se deduce de su Exposición de Motivos que se tomó la determinación extraordinaria de inscribir por fíat legislativo ciertos títulos que pendían en el Registro de la Propiedad, para brindar certeza al tráfico jurídico. Exposición de Motivos de la Ley Núm. 216-2010, supra. Cónsono con el ánimo de agilizar el procedimiento de inscripción en el Registro de la Propiedad, la Ley Núm. 216-2010 estableció en su Art. 5 (30 LPRA see. 1824), un “plazo improrrogable” de dos años contados a partir de su vigencia para calificar los documentos que no quedaron inscritos mediante su operación, tales como aquellos que contenían segregaciones y agrupaciones. Véase Art. 2 de la Ley Núm. 216-2010, supra, 30 LPRA see. 1821. Además, dispuso de un “plazo improrrogable” de noventa días para calificar los documentos presentados a partir del 1 de mayo de 2010. Como remedio ante el incumplimiento del Registrador con los términos anteriormente expuestos, el legislador solo dispuso un remedio reglamentario.(2)
El Reglamento para la Ejecución de la Ley Núm. 216 de 27 de diciembre de 2010, Reglamento Núm. 7988 de 4 de febrero de 2011, Departamento de Justicia, dispone de un mecanismo de fiscalización que emula sustancialmente al dispuesto por el antiguo Reglamento Hipotecario Núm. 2674. Así, ante el incumplimiento del Registrador con el término para calificar dispuesto en la Ley Núm. 216-2010, el único remedio para la parte interesada *950 en la inscripción es requerir por escrito al Registrador que cumpla con el plazo para calificar. Véase Art. 10 del Reglamento Núm. 7988, supra, págs. 6-7. El Registrador tendrá treinta días, a partir del recibo del requerimiento, para cumplir con el término aplicable. Si el Registrador no ha cumplido luego de haber sido requerido por escrito, el Reglamento Núm. 7988 provee también para que el Director Administrativo o la parte interesada en la inscripción presente una querella ante un funcionario designado para ello. Id., pág. 7. Nada se dispuso en cuanto los efectos que ese incumplimiento y las posibles sanciones disciplinarias tendrían sobre el documento presentado para calificación. Véase Rivera Rivera, op. cit., pág. 277. Del historial legislativo tampoco surge que la intención del legislador fuera que la tardanza en calificar tuviera algún efecto sobre el documento presentado. Al contrario, el historial refleja que el legislador presumió que el plazo concedido por el Art. 5 de la Ley Núm. 216-2010, supra, era suficiente para poner al día el Registro de la Propiedad. Informe de la Comisión de Asuntos de lo Jurídico y de Etica de la Cámara de Representantes, pág. 19. Por eso, no podemos, por fíat judicial, decretar que el documento quedó inscrito automáticamente por el mero transcurso del término improrrogable que estableció el legislador. Es decir, ante el incumplimiento con el plazo para calificar, corresponde al Director Administrativo tomar la acción correspondiente.
B. De hecho, siempre hemos expuesto que el mero paso del tiempo tampoco faculta a una parte interesada en la inscripción a presentar un recurso gubernativo. Véanse: SLG-Pérez Rivera v. Registradora, supra; Algarín v. Registrador, supra. Sin embargo, en las instancias donde el Registrador se ha negado a calificar expresamente, hemos utilizado el recurso gubernativo para ordenarle que cumpla con su deber. Indicamos, entonces, que “[l]a negativa del Registrador a calificar es materia típica de la jurisdicción gubernativa, porque esa negativa, bien o mal fundada, *951 en efecto cierra el Registro a la parte interesada en la inscripción, el mismo desenlace de la denegatoria y la suspensión”. Housing Inv. Corp. v. Registrador, 110 DPR 490, 500 (1980).
En esas instancias notamos la actuación peculiar del Registrador de, por ejemplo, enviar una nota en la cual se niega expresamente a calificar y a suspender la calificación hasta la subsanación de un defecto en un documento independiente. Véanse: Housing Inv. Corp. v. Registrador, supra, págs. 498-499 (mediante una nota emitida, se suspendió la calificación de una escritura de venta judicial hasta tanto se subsanara un defecto en la anotación preventiva de demanda que culminó en la venta judicial descrita en la escritura); Castro Lund v. Registrador, 102 DPR 295, 301-303 (1974) (discute los casos en los que el Registrador emitió notas en las cuales se negó como cuestión de hecho a inscribir); Rivera v. Registrador, 74 DPR 127, 132 (1952) (se devolvieron los documentos presentados junto a una nota en la cual se negó a realizar operación alguna en el Registro); Autoridad de Fuentes Fluviales v. Registrador, 71 DPR 847, 849 (1950) (se devolvieron los documentos presentados junto a una nota en la cual se negó a realizar operación alguna en el Registro). El denominador común en los casos citados es la abdicación manifiesta del Registrador de su razón de ser: la calificación de documentos. Esto contrasta con los casos en los que rechazamos intervenir porque no existía una verdadera negación a practicar una operación registral, sino un incumplimiento con el plazo para llevar a cabo la función en cuestión. Véanse: SLG-Pérez Rivera v. Registradora, supra; Senior Las Marías Corp. v. Registrador, 113 DPR 675, 683 esc. 5 (1982); Algarín v. Registrador, supra.
Los dictámenes que ordenan a los registradores a calificar instrumentos públicos tienen como fin que estos cumplan con su deber de calificar los documentos que se presentan ante el Registro de la Propiedad. Art. 64 de la *952 Ley Hipotecaria, 30 LPRA sec. 2267. No obstante, debemos resaltar que este Tribunal no supervisa el funcionamiento interno del Registro de la Propiedad; esa competencia recae sobre el Secretario de Justicia. Art. 2 de la Ley Hipotecaria, 30 LPRA see. 2001. Véase, además, E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, San Juan, Ed. Butterworth Legal Publishers, 1992, Vol. XV, pág. 344. Consecuentemente, ante un caso en donde se alegue una negativa a calificar, se deberá dirimir si, en efecto, el Registrador se ha negado a calificar o si en realidad se trata de una demora en el proceso de calificación, pues no podemos inmiscuirnos indebidamente en el funcionamiento interno del Registro de la Propiedad.
III
En este caso, del propio alegato del CRIM se deduce que no existe una calificación final, expresa o implícita que podamos revisar. Aunque el CRIM nos describió una alegada negativa de la Registradora a calificar, también nos señaló que esta le informó que la Escritura núm. 6 podría adolecer de documentos complementarios, falta que impide su inscripción. Art. 68 de la Ley Hipotecaria, 30 LPRA see. 2271. A dicha alegación debemos añadir que la Registradora mostró disposición a reunirse con la representación legal del CRIM para discutir la calificación de la escritura en cuestión.
En otras palabras, no estamos ante una negativa a calificar con carácter de calificación final y que para todos los efectos prácticos cierre el Registro a la parte interesada. Regla 27(a) de nuestro Reglamento, 4 LPRAAp. XXI-B. Más bien, el cuadro fáctico nos lleva a concluir que en realidad estamos ante una tardanza en el proceso de calificación. Dicho de otra forma, el proceso de calificación del instrumento público en cuestión, la Escritura núm. 6, luego de quince años aún no ha concluido. En contraste con la jurispruden *953 cia pertinente, en este caso no surge del expediente que la Registradora haya devuelto el instrumento público que debe calificar ni tampoco que haya emitido una nota que en algún modo sugiera la negación del asiento solicitado en la Escritura núm. 6. Todo lo contrario. Se infiere de las propias alegaciones de la peticionaria que la Registradora se reunió y se comunicó en varias instancias con el CRIM durante el proceso de calificación. Además, debemos recordar que las cartas enviadas por el CRIM hacen alusión expresa a que la Registradora informó durante la reunión que sostuvo con la representación legal del CRIM que “calificaría la escritura de epígrafe a la brevedad posible”. Apéndice, pág. 71. Por lo tanto, no podemos concluir que nos encontramos ante una calificación final, expresa o implícita, que habilite nuestra jurisdicción gubernativa.
No podemos inferir de forma alguna que el mero paso del tiempo creó un derecho a recurrir ante este Tribunal. De hecho, presumir que el mero paso del tiempo, o la violación del plazo improrrogable para calificar de la Ley Núm. 216-2010, supra, configuran una denegación tácita de un asiento registral plantea más problemas que soluciones. Primeramente, nos subrogaríamos en la posición de supervisores de un componente de la Rama Ejecutiva, facultad que no tenemos. Véase Vázquez Bote, op. cit., pág. 344. Además, tendríamos la tarea de definir cuánto tiempo es suficiente para calificar un instrumento público en el Registro de la Propiedad. Es precisamente para atender eso que nuestra jurisprudencia ha requerido un acto manifiesto para suponer una denegatoria implícita de un asiento registral.
Somos conscientes de las implicaciones que tiene en el tráfico jurídico y comercial el que un instrumento público permanezca años en el Registro de la Propiedad sin calificar. No obstante, nada en nuestro ordenamiento nos permite interferir con la labor de la Registradora cuando no ha habido actuación alguna que nos permita concluir *954 que esta ha abdicado a su deber personalísimo: la calificación de instrumentos públicos. Como vimos, existe un mecanismo para evitar que un instrumento público permanezca inmóvil en el Registro de la Propiedad. Ahora bien, corresponde a las otras dos ramas constitucionales determinar la efectividad de ese remedio a base de la experiencia y modificarlo de entenderlo necesario.
Según discutido en la sección anterior, el marco jurídico únicamente le permite al CRIM requerir por escrito a la Registradora que cumpla con el término estatutario para calificar la Escritura núm. 6. En caso de inacción por parte de la Registradora luego del requerimiento escrito, el CRIM tendrá a su disposición la posibilidad de presentar una querella ante el funcionario designado a esos efectos por el Secretario de Justicia. Esa fue la voluntad legislativa al diseñar el Registro de la Propiedad, la cual hasta hoy no ha cambiado. La propia Ley Hipotecaria establece en su Art. 65 (30 LPRA see. 2268) que, salvo los casos en donde proceda el recurso gubernativo contra una calificación, los tribunales no podemos en distinta forma obligar o impedir a los registradores a practicar operación registral alguna. Así, por ejemplo, hace más de un siglo establecimos que no procede un recurso de mandamus para obligar a un Registrador a inscribir un documento en el registro. Cividanes v. El Registrador de la Propiedad, 11 DPR 271 (1906). Por consiguiente, y en vista de lo anteriormente discutido, la intervención de este Tribunal, de acuerdo con los hechos de este caso, estaría a destiempo.
IV
Por los fundamentos antes expuestos, se desestima el presente Recurso Gubernativo por falta de jurisdicción.
La Jueza Asociada Oronoz Rodríguez disintió con una opinión escrita.

 Contrario a lo expuesto por el Centro de Recaudación de Ingresos Municipales (CRIM), de ese instrumento público no surge en forma diáfana que se haya transferido el título de la finca 9,327 a IATG. Apéndice, págs. 24-27.

 Un examen del historial legislativo de la Ley Núm. 216-2010 revela que la versión original del P. de la C. 2683 presentada en la Asamblea Legislativa no con tenía el término “improrrogable” al referirse al plazo no mayor de dos años que tendrían los Registradores para calificar los documentos que no quedaron inscritos automáticamente. Según consta en el informe de la Comisión de Asuntos de lo Jurídico y de Ética de la Cámara de Representantes, ese término fue añadido como parte del proceso legislativo como sugerencia de la Asociación de Notarios. Informe de la Comisión de Asuntos de lo Jurídico y de Ética de la Cámara de Representantes, pág. 7. Ante esa sugerencia, el Departamento de Justicia no tuvo objeción, pero sugirió que se incluyera en el mismo Art. 5 que los Registradores solo podrían ser sancionados cuando incumplieran con los referidos términos por razones únicamente atribuibles a ellos. Esas dos sugerencias fueron acogidas por la Asamblea Legislativa.