EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rigores, Inc.<br><br>Recurrente<br><br>v.<br><br>Registrador de la Propiedad, Sección de Barranquitas, Hon. José Tomás Rojas Nieves<br><br>Recurrido | Certiorari<br><br>2005 TSPR 135<br><br>165 DPR \_\_\_\_ |

Número del Caso: RG-2004-2

Fecha: 16 de septiembre de 2005

Abogado de la Parte Recurrida:

Por Derecho Propio

Abogado de la Parte Recurrente:

Lcdo. Juan R. Zalduondo Viera

Materia: Ejecución de Hipoteca

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rigores, Inc.

    Recurrente

       v.                  RG-2004-2

Registrador de la Propiedad,
Sección de Barranquitas, Hon.
José Tomás Rojas Nieves

    Recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 16 de septiembre de 2005

En el año 1978, Roda Development Corp. suscribió veintinueve (29) pagarés constituidos a la orden del portador y con vencimiento a la presentación por la suma principal de $26,000, cada uno con intereses al 8% anual desde la fecha de su otorgamiento hasta su completo pago. Los referidos pagarés fueron garantizados mediante una hipoteca que gravó veintinueve (29) fincas que eran de la propiedad de Roda Development Corp., sitas en Corozal[1]. La hipoteca fue presentada para inscripción en el Registro de la

---

[1] Escritura número 165 sobre hipoteca suscrita el 4 de agosto de 1975 ante la notario Nilda Soto De Bernier.

Propiedad el día 15 de diciembre de 1978, quedando inscrita el 11 de junio de 1979.[2]

A pesar de los requerimientos de Rigores, Inc. --tenedora de los pagarés hipotecarios-- Roda Development Corp. no efectuó los pagos convenidos. En virtud de ello, el 24 de enero de 2001, Rigores, Inc. instó un procedimiento ordinario de ejecución de hipoteca ante el Tribunal de Primera Instancia, Sala Superior de Bayamón[3]. El 6 de septiembre de 2001, el foro primario dictó sentencia a favor de Rigores, Inc. y ordenó la venta en pública subasta de las propiedades hipotecadas para asegurar el cumplimiento de la sentencia y obtener el pago de los créditos hipotecarios[4].

Posteriormente, el tribunal de instancia declaró con lugar una orden solicitando ejecución de hipoteca presentada por la demandante Rigores, Inc. y ordenó a la secretaría de dicho foro a emitir el mandamiento correspondiente, requiriendo al alguacil para que procediese a la ejecución de la sentencia dictada en el caso.

---

[2] En virtud del Artículo 53 de la Ley Hipotecaria 30 L.P.R.A. sec. 2256, la fecha de inscripción de un título se retrotrae a la fecha de presentación del mismo.

[3] Civil Núm. DCD01-0171. La referida demanda no fue anotada en el Registro de la Propiedad para dar aviso a terceros.

[4] La demandada, Roda Development Corp. no había contestado la demanda ni formulado alegación alguna, razón por la cual se le anotó, y se dictó sentencia, en rebeldía.

La subasta pública fue celebrada el 22 de septiembre de 2003. A la misma concurrió la demandante Rigores, Inc., como único licitador, e hizo oferta por la suma de treinta mil dólares ($30,000) por cada una de las fincas en abono a la sentencia dictada el día 6 de diciembre de 2002. No habiendo otra oferta, se le adjudicó la buena pro de cada una de las fincas que respondían por los pagarés hipotecarios suscritos por Roda Development Corp.

Posteriormente el alguacil y la corporación Rigores, Inc. comparecieron como otorgantes de la escritura número 219 de venta judicial suscrita ante la notario Rosa E. Permuy Calderón, por medio de la cual se transfirió la titularidad de los inmuebles vendidos en pública subasta a Rigores, Inc.

Así las cosas, el 10 de diciembre de 2003 la Lcda. Permuy Calderón presentó la escritura de venta judicial en el Registro de la Propiedad, Sección de Barranquitas. El Registrador de la Propiedad denegó la inscripción solicitada; notificó seis faltas que impedían la inscripción de la referida escritura. Las faltas señaladas fueron las siguientes:

1. Que las fincas constaban inscritas a favor de Kaiser Construction, Inc., titular distinto del demandado Roda Development

Corp.[5] y que, tratándose de una ejecución de hipoteca por la vía ordinaria[6], la indebida notificación a la persona contra la cual se ha instado una acción judicial producía la nulidad de la sentencia dictada por falta de jurisdicción, según lo resuelto en Lanzó v. Banco de Vivienda y M.T. Investment, 133 D.P.R. 507 (1993).

2. Que en todo caso que se inicie el procedimiento de ejecución, tendrá que demandarse al titular inscrito, según el Artículo 181.1 del Reglamento Hipotecario.

3. Que es nulo todo procedimiento de ejecución de hipoteca donde no se incluya como demandado al titular registral, según lo resuelto en Metropolitan Marble v. Pichardo, 145 D.P.R. 607 (1998).

---

[5] De las veintinueve (29) fincas sujetas al pago de la obligación, dieciocho (18) de estas constaban inscritas en el Registro de la Propiedad a favor de Kaiser Construction Inc., desde el 21 de noviembre del 2000. Kaiser Construction Inc. adquirió las referidas fincas por compra mediante subasta pública producto de un pleito en cobro de dinero contra Roda Development Corp. (civil núm. 90-2368) y en virtud de la escritura número 10 de venta judicial otorgada el 28 de junio de 1999 ante el notario Antonio Aponte Parés.

[6] Es menester señalar que del Registro surge que las veintinueve fincas se hallan afectas a hipoteca de $26,000 a favor del portador con vencimiento a la presentación desde el 15 de diciembre de 1978.

4. Que toda vez que de los documentos no surgía que se hubiera instado acción alguna contra el titular inscrito se incumplía con la Regla 51.8 de las de Procedimiento Civil ya que éste debió haber sido demandado y notificado del procedimiento en su contra.

5. Que del Registro surgía, en cuanto al asiento 224 del diario 492, que se había presentado una instancia <u>el 16 de abril de 2003</u>, en la que se solicitó la cancelación de la hipoteca que se ejecutaba mediante el documento presentado (escritura de venta judicial), por haber prescrito la misma según el Artículo 145 de la Ley Hipotecaria.[7]

6. Que la Ley Hipotecaria, en su Artículo 53 dispone que para determinar la preferencia entre dos o más inscripciones relativas a una misma finca, se atendería la fecha, hora y número de la presentación en el Registro. Por tanto, al retrotraerse la

---

[7] <u>Previo</u> a la fecha de presentación de la escritura de venta judicial suscrita por Rigores Inc., en el Registro se había presentado una instancia, el <u>16 de abril de 2003</u>, al asiento 224 del diario 492. Dicha instancia fue jurada y suscrita por Kaiser Construction Inc. ante el notario Nelson W. González y en la misma <u>solicitó que se cancelara la hipoteca --por prescripción-- en cada una de las fincas que garantizaba los pagarés suscritos por Roda Development Corp</u>.

efectividad de la cancelación de la hipoteca a la fecha de la presentación de la instancia, el 16 de abril de 2003, no existía la hipoteca a ser ejecutada debido a la solicitud de cancelación de la misma.[8]

Inconforme con la calificación, Rigores, Inc. presentó un escrito de recalificación. En cuanto a los primeros cuatro señalamientos de faltas alegó que en la escritura de venta judicial se expresaron todos los procedimientos seguidos y aprobados por el tribunal competente que sirvieron de base para la adjudicación de las propiedades y el otorgamiento de dicha escritura,[9] y que tratándose de un documento expedido por autoridad judicial, la facultad calificadora de un Registrador es una limitada. Señaló, además, que según el Artículo 181.1 del Reglamento Hipotecario, se requiere que en la demanda de ejecución hipotecaria se incluya al titular registral que conste del Registro de la Propiedad al momento en que se radica la misma y que el demandante no tiene la obligación de estudiar la situación registral de la

---

[8] Es menester señalar que, según surge del expediente, la referida hipoteca aun no ha sido cancelada por el Registrador.

[9] Se señaló, además, que se acompañaron documentos complementarios que acreditaban los trámites efectuados de la acción judicial y del aviso y venta en pública subasta.

propiedad que se ejecuta durante todo el transcurso del trámite judicial.

En cuanto a los últimos dos señalamientos de faltas, Rigores, Inc. alegó que cuando la inscripción de los derechos presentados en el Registro de la Propiedad se retrotrae a la fecha de presentación de los mismos sólo tiene consecuencia en cuanto a los efectos de su rango para propósitos del tracto registral y no el de brindar protección sobre un derecho aun no inscrito. En otras palabras, señaló que hasta tanto el derecho presentado no se calificara favorablemente, no podía hablarse de un derecho inscrito. En adición, alegó que la hipoteca no estaba prescrita pues el término prescriptivo había sido interrumpido por la acción judicial de ejecución de hipoteca, aun cuando dicha interrupción no surgía del Registro. En virtud de lo anterior solicitó del Registrador que reconsiderara la calificación e inscribiera la escritura de venta judicial presentada.

El Registrador ratificó su calificación original. Aun inconforme, Rigores Inc. presentó un recurso gubernativo ante este Tribunal en revisión de la mencionada determinación. En el mismo hace, en esencia, dos señalamientos de error. En el primero alega que erró el Registrador al denegar la inscripción de la escritura de venta judicial sin considerar el procedimiento adjudicativo ante el Tribunal de Primera Instancia y la sentencia dictada por dicho foro. En el segundo, alega que

erró el Registrador al darle valor de elemento de tracto sucesivo a una instancia presentada sin ser avalada por un dictamen de un tribunal de justicia competente y sin que se demostrara la validez de la cancelación solicitada. El Registrador de la Propiedad presentó su alegato. Contando con la comparecencia de ambas partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

La primera controversia planteada ante nos se reduce a determinar si el Registrador podía denegar la inscripción de la escritura de venta judicial por razón de no haberse incluido al titular registral en el procedimiento de ejecución de hipoteca. Lo anterior, en virtud de los primeros cuatro señalamientos de falta que hiciera el referido funcionario.

Como parte del principio de legalidad inmerso en nuestro ordenamiento registral, los Registradores de la Propiedad tienen la obligación legal de verificar que todo documento presentado ante el Registro sea válido y perfecto. R&G Premier Bank of Puerto Rico v. Valentín, res. el 5 de noviembre de 2002, 2002 T.S.P.R. 143; Gasolinas PR v. Registrador, res. el 15 de noviembre de 2001, 2001 T.S.P.R. 158; U.S.I. Properties Inc. v. Registrador, 124 D.P.R. 448, 465 (1989); Dershowitz & Co., Inc. v. Registrador, 105 D.P.R. 267 (1976).

La calificación registral constituye la piedra angular del principio de legalidad. Esta calificación exige del Registrador de la Propiedad un juicio de crítica jurídica sobre la validez y eficacia de los negocios jurídicos contenidos en los documentos presentados, a través de la cual se logra que sólo tengan acceso al Registro los títulos que cumplan con las exigencias legales. Véase: Alameda Tower Associates v. Muñoz Román, 129 D.P.R. 698, 706 (1992).

Específicamente, la facultad de calificar los documentos que le son presentados le es otorgada al Registrador por el Artículo 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267. La referida disposición estatutaria establece que:

> Los registradores calificarán, bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, los asientos registrales vigentes y las leyes.
>
> (. . .)
>
> En cuanto a los documentos expedidos por la autoridad judicial, la calificación expresada se limitará: (1) a la jurisdicción y competencia del tribunal; a la naturaleza y efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez; (2) a las formalidades extrínsecas de los documentos presentados; y (3) a los antecedentes del registro.

> En cualquier caso el registrador podrá requerir se produzcan los documentos complementarios necesarios para una adecuada calificación, bien sean éstos notariales, judiciales o administrativos. (Énfasis nuestro) (citas omitidas).

Según el profesor Luis Rafael Rivera Rivera "(c)uando la Ley señala que al calificar, el Registrador utilizará el propio Registro, quiere significar que deberá acudir a los asientos vigentes y realizar una comprobación de datos: identidad de la finca, identidad del titular registral, buscas de cargas y gravámenes, etc." Derecho Registral Inmobiliario Puertorriqueño, 2da. ed., San Juan, Jurídica Editores, 2002, pág. 285.

Resulta evidente del antes transcrito Artículo 64 que, dependiendo del tipo de documento que el Registrador tenga ante sí, su facultad calificadora será distinta. Cuando se trata de documentos notariales, la facultad del Registrador para calificar se extiende a examinar: (1) que éstos cumplan con las formas extrínsecas dispuestas por la ley; (2) que los otorgantes ostenten la capacidad jurídica para realizar el negocio jurídico pertinente; (3) que los actos dispositivos contenidos en la escritura presentada sean válidos, y (4) que no existan obstáculos que surjan del Registro de la Propiedad que impidan la inscripción del documento. Véase: Gasolinas PR v. Registrador, ante; Western Federal Savings Bank v. Registrador, 139 D.P.R. 328 (1995).

En cambio, al calificar <u>documentos expedidos por autoridad judicial</u>, la facultad calificadora del Registrador es limitada. Así, la calificación registral se circunscribe, únicamente, a lo dispuesto por el Artículo 64 de la Ley Hipotecaria, ante. En el presente caso --por entender que la escritura de venta judicial es un documento expedido por autoridad judicial para efectos de la calificación-- la recurrente, Rigores, Inc. sostiene que el Registrador no podía cuestionar el procedimiento de ejecución hipotecaria previamente atendido y avalado por el foro de instancia y que sirvió de base para la adjudicación de las propiedades y el otorgamiento de la escritura en cuestión. <u>Veamos</u>.

En <u>C.R.U.V.</u> v. <u>Registrador</u>, 117 D.P.R. 662 (1986) resolvimos que para efectos de lo dispuesto por el referido Artículo 64, ante, en cuanto a la calificación de documentos judiciales, una <u>escritura pública de compraventa judicial</u>, en la cual sólo comparece el alguacil como parte en su carácter oficial, <u>no constituye un documento expedido por autoridad judicial</u>[10]. A estos efectos expresamos que "(l)a escritura pública de compraventa en que el funcionario judicial interviene en

---

[10] En <u>Atanacia Corp.</u> v. <u>J.M. Saldaña, Inc.</u> 133 D.P.R. 284 (1993), reiteramos lo resuelto en <u>C.R.U.V.</u> v. <u>Registrador</u>, ante, a los efectos de que la escritura pública de venta judicial, en la que el alguacil del tribunal interviene en representación de uno de los otorgantes, <u>no</u> se considera un documento expedido por autoridad judicial.

representación de uno de los otorgantes y ésta está autorizada por un notario, no puede considerarse como un documento expedido por autoridad judicial".[11]

Por consiguiente, en el presente caso, al no ser la escritura de venta judicial presentada ante el Registrador un documento expedido por autoridad judicial, éste no se encontraba limitado según lo dispuesto por el Artículo 64 de la Ley Hipotecaria, ante, para la calificación de documentos judiciales. Dicho de otra forma, el Registrador tiene que calificar una escritura pública de venta judicial dentro del ámbito de la calificación de los documentos notariales. Véase: Rodríguez Morales v. Registrador, 142 D.P.R. 347 (1997).

De otra parte, atendemos los planteamientos hechos por el Registrador, con respecto a la nulidad de la sentencia dictada por el foro primario en el pleito de ejecución de hipoteca. El Registrador fundamentó su denegatoria a inscribir la escritura de venta judicial, objeto del presente recurso, citando lo resuelto en los casos de Lanzó v. Banco de la Vivienda y M.T. Investment, ante, y Metropolitan Marble v. Pichardo, 145 D.P.R. 607 (1998). Según el Registrador, siguiendo lo expresado en

---

[11] Citando Resoluciones del Tribunal Supremo de España de 29 de marzo de 1880, 26 de noviembre de 1884, 30 de marzo de 1885, 30 de mayo de 1898, 31 de marzo y 11 de julio de 1936; y a J.M. Mena y San Millán, Calificación Registral de Documentos Judiciales, Barcelona, Ed. Bosch, 1985, pág. 43; B. Camy Sánchez Carnete, Comentarios a la legislación hipotecaria, 3ra ed., Pamplona, Ed. Aranzadi, 1982, Vol. I, pág. 236 y Vol. VI, págs. 755-756.

los casos antes citados, la sentencia del tribunal de instancia ordenando la venta en pública subasta de los inmuebles era nula por causa de no haberse demandado al titular registral en el procedimiento de ejecución de hipoteca.

En _Lanzó_, ante --pleito contencioso donde se impugnaba la validez de una sentencia dictada en ejecución de una hipoteca-- resolvimos que la misma era nula por incumplimiento con los requisitos rigurosos dispuestos en _Mundo_ v. _Fúster_, 87 D.P.R. 363 (1983) y las Reglas de Procedimiento Civil, para el emplazamiento por edictos ya que la indebida notificación a la persona contra la quien se ha instado un pleito produce la nulidad de la sentencia dictada por falta de jurisdicción. Por su parte, en _Marble_, ante, ciertamente resolvimos --también dentro de un pleito contencioso-- que la ausencia de notificación al titular registral acarreaba la nulidad del procedimiento de subasta.

No obstante, en los referidos casos _no_ resolvimos, de forma alguna, que un Registrador de la Propiedad podía, al momento de calificar un documento ante sí, hacer una determinación de nulidad de una sentencia como fundamento para denegar una inscripción.

Es de notar que en _Dershowitz & Co., Inc._ v. _Registrador_, ante, habíamos señalado que la función calificadora del Registrador tiene la particularidad de que la misma es ejercida por un _funcionario administrativo_

por lo cual se excluye la idea de que el Registrador sea un juez que adjudique derechos. En este sentido sostuvimos en P.R. Prod. Cred. Assoc. v. Registrador, que un Registrador no puede actuar como Juez y expresamos que el permitir que un Registrador revise una sentencia emitida por un tribunal tendría el efecto de convertir a este funcionario ejecutivo en un juez de jueces[12]. La función de declarar nula una sentencia corresponde, únicamente, a los tribunales[13]. Los registradores están vedados de hacer esta determinación. En consecuencia el Registrador, en este caso, erró al señalar como defecto la nulidad de la sentencia dictada por el foro primario.

Ahora bien, el Registrador correctamente señaló, como falta de la que adolecía la escritura de venta judicial presentada por Rigores, Inc., que esta incumplió con el requisito dispuesto en el Artículo 181.1 del Reglamento General para la Ejecución de la Ley Hipotecaria, 30 L.P.R.A. sec. 2003-181.1, edición especial, al no acreditar que se había demandado al titular registral en el procedimiento de ejecución de hipoteca. Es menester enfatizar sobre este particular que el  propio Artículo

---

[12] En adición resolvimos en U.S.I. Properties, Inc. v. Registrador, ante, que cuando el negocio a ser inscrito está sancionado por un tribunal de justicia, debe prevalecer la presunción de validez de la sentencia.

[13] La acción de nulidad del proceso de subasta y de venta judicial es el recurso apropiado para impugnar la validez de la sentencia dictada por el foro primario en el presente caso.

64, ante, le impone al Registrador el <u>deber</u> de tomar en consideración los <u>asientos registrales</u> vigentes <u>y las leyes</u> al momento de calificar los documentos que se le presenten.

A estos efectos, el mencionado Artículo 181.1 del Reglamento Hipotecario, ante, dispone, sobre el procedimiento de ejecución de hipoteca, que en todo caso que se inicie el procedimiento de ejecución por la vía ordinaria, <u>tendrá que demandarse al titular inscrito</u>.

En el caso de <u>Atanacia Corp.</u> v <u>J.M. Saldaña, Inc.</u> 133 D.P.R. 284 (1993) expresamos que el proceso ordinario de ejecución de hipoteca se inicia con la presentación de una demanda ante el tribunal competente <u>y el emplazamiento del titular registral del bien o del derecho hipotecado o sus causahabientes</u>.[14]

Expresamos, además, en dicho caso que en el proceso *post* sentencia de la subasta, venta y adjudicación de los bienes para hacer efectivo el crédito bajo el procedimiento ordinario, la intervención judicial resulta

---

[14] El procedimiento ordinario de ejecución de hipoteca, según el Artículo 201 de la Ley Hipotecaria, 30 L.P.R.A. sec. 7701, está regulado por los Artículos 202 y 207 párrafos V y VI, 220 a 224, 226 exceptuando la frase relativa al requisito de confirmación; 227 a 229, 231, 232 y 234; y las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III; Véase además, <u>C.R.U.V.</u> v. <u>Torres Pérez</u>, 111 D.P.R. 698 (1981); <u>Ramírez</u> v. <u>Registrador</u>, 116 D.P.R. 541 (1985); <u>Housing Inv. Corp.</u> v. <u>Registrador</u>, 110 D.P.R. 490 (1980); <u>Talcott Inter-Amer. Corp.</u> v. <u>Registrador</u>, 104 D.P.R. 254 (1975); y <u>Mundo</u> v. <u>Fúster</u>, 87 D.P.R. 363 (1963).

limitada. Salvo contadas excepciones, el foro judicial deja en manos del alguacil del tribunal y del acreedor ejecutante el proceso post sentencia de subasta, venta y adjudicación de los bienes ejecutados para satisfacer el crédito[15]. Sobre este particular el profesor Luis Rafael Rivera Rivera expresa que el procedimiento ejecutivo ordinario se compone de una fase previa contenciosa y una eminentemente ejecutiva en que la intervención judicial post sentencia de la subasta, venta y adjudicación de los bienes es limitada. Por ello, señala el referido autor, es recomendable que antes de iniciarlo se realice un estudio de título del bien objeto de la ejecución para identificar su titular registral, los gravámenes posteriores y posibles embargos. Op.cit. pág. 577.

Como vemos, en la ejecución del crédito, el acreedor viene obligado por las constancias del Registro, sin que se le imponga la obligación de investigar e identificar, para incluirlos en su demanda, posibles adquirentes ocultos del bien hipotecado, según resolvimos en Housing Inv. Corp. v. Registrador, 110 D.P.R. 490 (1980). En este caso expresamos, además, que el acreedor hipotecario ejecutante puede y debe depender del Registro de la Propiedad e incoar su demanda contra el que allí aparece como titular poseedor del inmueble gravado al comienzo de la acción ejecutoria. *Ibid*.

---

[15] Véase Regla 51.8(b), (c) y (d) de Procedimiento Civil, 32 L.P.R.A. Ap. III.

De modo tal que, ante la importancia de la exigencia que le impone la propia Ley Hipotecaria al acreedor hipotecario, el Registrador será responsable de velar porque se haya cumplido con el requisito de notificación al titular registral previo a la inscripción de una escritura de venta judicial mediante la cual se transfiere el derecho de propiedad a otra persona. A tono con lo anterior, es razonable concluir que el Registrador, al momento de calificar una escritura de venta judicial producto de un procedimiento ordinario de ejecución de hipoteca, inquiera y solicite que se acredite si el titular registral inscrito fue parte del procedimiento. Máxime cuando, como en el presente caso, aparece claramente del Registro que el titular registral es uno distinto del que fue demandado en el pleito de ejecución hipotecaria.

En el presente caso, al momento de iniciarse el pleito, el 24 de enero de 2001, dieciocho (18) de las fincas vendidas en pública subasta constaban inscritas a favor de Kaiser Construction Inc.[16] Vale la pena resaltar que Rigores Inc. inició el pleito de ejecución de hipoteca únicamente contra la demandada Rodas Development Corp. El titular registral de estas fincas, Kaiser Development Corp., no fue demandado ni incluido en el pleito.

---

[16] La cual tenía el derecho de propiedad sobre las referidas fincas inscrito a su favor desde el 21 de noviembre del 2000.

En consecuencia, las faltas señaladas por el Registrador a estos efectos son correctas, ya que surge claramente que Rigores, Inc. incumplió con la Ley Hipotecaria al dejar de demandar al titular registral en el procedimiento de ejecución de hipoteca.

II

En su alegato el Registrador expresa, como fundamento adicional a la denegatoria de inscripción del documento en cuestión, que al surgir del Registro, como titular de las propiedades, una persona distinta a la que aparece como transmitente del derecho a inscribirse, había falta de tracto sucesivo, factor que también impedía la inscripción. Le asiste la razón.

El principio de tracto sucesivo tiene relación con la antes mencionada obligación del acreedor ejecutante de demandar al titular registral al momento de iniciarse el pleito sobre ejecución de hipoteca ya que para que un título o documento constitutivo de un derecho real tenga acceso al Registro, es necesario que el derecho del transmitente conste previamente inscrito.

El principio de tracto sucesivo o de continuidad registral tiene por objeto mantener el enlace o conexión de las adquisiciones por el orden regular de los titulares registrales sucesivos, a base de formar todos los actos adquisitivos inscritos una continuidad perfecta en orden al tiempo, de suerte que ello refleje el historial

sucesivo de cada finca inmatriculada; de modo que el transferente de un derecho real hoy sea el adquirente de ayer y que el titular registral actual sea el transferente de mañana. R.M. Roca Sastre, Derecho Hipotecario, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 327. Por ello, el "principio de tracto sucesivo es un principio de orden, a través del cual giran los demás principios hipotecarios, y señaladamente los de fe pública y de legitimación registral". Roca Sastre, op. cit., pág. 328; Vázquez Santiago v. Registrador, 137 D.P.R. 384, 390-391 (1994).

Específicamente, el Artículo 57 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2260 dispone que:

> Para registrar documentos por los que se declaren, trasmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos.
>
> Se denegará la registración de resultar inscrito el derecho a favor de persona distinta de la que otorga la trasmisión o gravamen. No obstante, podrán inscribirse sin el requisito de la previa inscripción las resoluciones y ejecutorias, que se refieren en las secs. 2761 a 2777 de esta ley. (Énfasis nuestro).

Por consiguiente el Artículo 57 le impone al Registrador la obligación de comprobar si el derecho del disponente consta inscrito a su favor en el Registro de la Propiedad. De modo que si el título presentado aparece otorgado por una persona distinta del titular registral, el Registrador está imposibilitado de inscribir. Además,

por disposición <u>expresa</u> del Artículo 57, ante, cuando un título presentado para su inscripción no cumpla con el tracto sucesivo, se denegará la inscripción solicitada. <u>Vázquez Santiago</u> v. <u>Registrador</u>, ante, a la pág. 390.

Por otro lado, el Artículo 68, 30 L.P.R.A. sec. 2771, dispone que:

> Serán faltas que impidan la registración del título presentado:
>
> (1) Las que causen la inexistencia del acto o contrato a registrarse o la nulidad o anulabilidad de éste o del documento presentado.
>
> (2) <u>Las que se originen de obstáculos del Registro</u>.
>
> (3) Las que se funden en disposiciones de este subtítulo.
>
> (4) El no presentar los documentos complementarios necesarios o no acreditarse el cumplimiento de las formalidades exigidas por las leyes.

Sobre este particular el profesor Luis Rafael Rivera Rivera expresa que, entre las causas que impiden la inscripción de título y que se originan de obstáculos en el Registro, <u>se encuentra la falta de tracto sucesivo, porque el transferente no aparece como titular registral</u>; las prohibiciones de enajenar inscritas, o la existencia de condiciones restrictivas que impiden el acto o contrato que se pretende inscribir. Op.cit. págs. 305-306.

En el presente caso, <u>surgía del Registro</u> que el titular registral de dieciocho (18) de las fincas al momento de presentarse la escritura de venta judicial lo

era Kaiser Construction, Inc. En dicha escritura, compareció el alguacil del tribunal en representación de Rodas Development Corp, quien fue la entidad demandada como propietaria de las fincas. Dicha entidad no era la titular registral de dieciocho (18) de las fincas vendidas en pública subasta, según los libros del Registro, ya que las mismas constaban inscritas a favor de Kaiser Construction, Inc. La consecuencia de lo anterior, es que no hay tracto sucesivo.

Por consiguiente, repetimos, es correcto el señalamiento del Registrador a los efectos de que la falta de tracto sucesivo también era factor que impedía la inscripción de la referida escritura pues el "transmitente" del título, Roda Development Corp., no tenía su derecho previamente registrado, tal y como lo ordena el Artículo 57 antes citado.

## III

En conclusión, resolvemos que el Registrador de la propiedad actuó correctamente al denegar la escritura de venta judicial presentada por Rigores, Inc. ya que dicha entidad, incumplió con el requisito impuesto por el Artículo 181.1 del Reglamento Hipotecario, ante, al no demandar al titular inscrito en el Registro de la Propiedad, Kaiser Development Corp. en el procedimiento de ejecución hipotecaria, conllevando este acto, además, a la falta de tracto sucesivo, razones por la cual el

Registrador se encontraba impedido de inscribir la referida escritura[17].

A la luz de los fundamentos antes expuestos, se <u>confirma</u> la calificación recurrida.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[17] En vista a ello, se hace innecesario discutir los señalamientos de faltas quinto y sexto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rigores, Inc.

    Recurrente

       v.                    RG-2004-2

Registrador de la Propiedad,
Sección de Barranquitas, Hon.
José Tomás Rojas Nieves

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 16 de septiembre de 2005

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la calificación recurrida.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri inhibido.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo