SENIOR LAS MARÍAS CORP., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN PRIMERA, recurrido.

*Número:* O-82-479    *Resuelto:* 29 de diciembre de 1982

*Eduardo E. Franklin* y *Estela I. Vallés Acosta,* de *O'Neill & Borges,* abogados de la recurrente; El Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La corporación Condominio Punta Las Marías, Inc. era dueña de un solar de tres mil ochocientos ochenta y un (3,881) metros cuadrados localizado en el número 2392 de la Urbanización Ocean Park, Santurce, Puerto Rico, inmueble que dicha corporación había adquirido en permuta, por un valor de $382,500 mediante la escritura pública número 554, de fecha 9 de octubre de 1968, otorgada ante el notario público Ángel A. García.

Para principios de la década del setenta la referida corporación, con el propósito de construir un edificio (condominio) residencial, obtuvo un "préstamo interino de construcción" de El Paraíso Properties, Inc. —corporación organizada al amparo de las leyes del estado de Florida, Estados Unidos de América, y subsidiaria de Continental Mortgage Investors, que es un Massachusetts Business Trust. Dicho préstamo interino fue garantizado por una hipoteca sobre el referido bien inmueble y vencía el 30 de junio de 1974.

Comenzada la construcción del referido edificio, como en tantos otros casos sucedidos en Puerto Rico durante la década del setenta, la corporación Condominio Punta Las Marías, Inc. fue a la quiebra, quedándose el edificio a medio terminar. Hasta ese momento el principal de dicho préstamo ascendía a $2,354,935.80.

Vencido y no pagado el préstamo, la acreedora hipotecaria El Paraíso Properties, Inc. presentó, el 12 de febrero de 1975, la correspondiente demanda de ejecución de hipoteca, celebrándose la subasta el día 3 de febrero de 1981, o sea, casi seis años más tarde desde la fecha de la radicación de la demanda, período durante el cual el edificio permaneció abandonado.

Curiosamente —ya que así no estaba obligado a hacerlo— el referido acreedor hipotecario compareció y licitó en la primera subasta, adjudicándosele la propiedad y otorgán-

dosele la correspondiente escritura de venta judicial y cancelación de hipoteca ante la notario público Victoria D. Pierce el 5 de febrero de 1981 por la suma de $3,057,000.([1])

Así las cosas, la recurrente Senior Las Marías Corp. —corporación también organizada al amparo de las leyes del estado de Florida integrada por los acreedores asegurados preferentes de Continental Mortgage Investors— adquirió de El Paraíso Properties, Inc., mediante una escritura de dación en pago. otorgada el 20 de mayo de 1981 en la ciudad de Boston, Massachusetts, el antes mencionado bien inmueble en pago parcial —$750,000— de una deuda de mayor cuantía que para con la recurrente Senior Las Marías Corp. tenía Continental Mortgage Investors. Esto formó parte de una transacción que fue negociada dentro de un procedimiento de quiebra relativo a la mencionada Continental Mortgage Investors en la Corte federal para el Distrito de Massachusetts. La transacción mereció la aprobación de.ese Tribunal.

Presentada el 22 de junio de 1981 ante la Sección Primera de San Juan del Registro de la Propiedad la Escritura número 7 de Protocolización de Escritura de Dación en Pago,([2]) otorgada el 8 de junio de 1981 ante el notario público Eduardo A. Franklin, el Registrador de la Propiedad, mediante notificación del 23 de marzo de 1982, denegó su inscripción mediante la siguiente nota denegatoria, la cual copiada literalmente lee:

Se presume hay donación envuelta en la transacción solicitada. La vendedora adquirió la propiedad por $3,057,000.00 y vende por la cantidad de $750,000.00. Tomo 91 DPR 679 Caso Nietos vs. Registrador, Tomo 13 LPRA Sec. 352. Art. 167 Ley Herencias y Donaciones según enmendada en 1968. Pendiente de inscripción se hallan los asientos *33 y 34* los cuales se notifican con esta misma fecha. 719

---

([1]) La diferencia entre la suma de $2,354,935.80 y la de $3,057,000 corresponde a intereses y honorarios de abogados pactados.

([2]) Se refiere a la otorgada el 20 de mayo de 1981 en Boston, Massachusetts.

No conforme con dicha denegatoria, la recurrente Senior Las Marías Corp. presentó un escrito de recalificación el 12 de abril de 1982. Acompañó dicho escrito con evidencia documental demostrativa de que el edificio a medio terminar en el mencionado solar se encontraba en tal estado de abandono que había sido declarado "estorbo público" por la Asamblea Municipal de la Ciudad de San Juan, Puerto Rico.

Mediante notificación con fecha del 9 de julio de 1982, el Registrador se reafirmó en su denegatoria original, la cual lee como sigue:

> Se presume hay donación envuelta en la transacción solicitada. La vendedora adquirió la propiedad por $3,057,000.00 y vende por la cantidad de $750,000.00. Tomo 91 DPR 679 Caso Nieto vs. Registrador. Tomo 13 LPRA Sec. 352. Sec. 881 y 901 Título 13 LPRA. Contribuciones sobre Herencias y Donaciones. (falta)

La recurrente Senior Las Marías Corp., ante nos, argumenta:

*SEÑALAMIENTO DE LA CUESTION DE DERECHO PLANTEADA.*

A. La notificación de defecto expedida por el Honorable Registrador no es suficiente por no cumplir con los requisitos establecidos en el Artículo 81.2 del Reglamento Número 2674 de 9 de julio de 1980, Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad de 1979.

B. Erró el Honorable Registrador al determinar que existe una donación en la Escritura de Dación en Pago y que no se acreditó el pago o exención de la correspondiente contribución, lo que constituye una falta e impide su registración.

C. El Honorable Registrador no tiene facultad en ley para denegar la inscripción solicitada por haber transcurrido el término de treinta días que, a partir del recibo del Escrito de Recalificación, para ello tenía.

Antes de entrar en la consideración propiamente del recurso, es menester señalar que el Registrador, en su "alegato", nos indica que en relación con el inmueble en controversia se presentó ante el Registro la Escritura número 111 con fecha del 10 de diciembre de 1981, sobre permuta, otorgada ante el notario público Milton Juan Rúa, mediante la cual la recurrente Senior Las Marías Corp. permutó el referido inmueble a Lincoln Financial Mortgage, Inc. por la suma de $1,290,000.00. [3]

La posición asumida por el Registrador recurrido se puede resumir de la siguiente manera: es correcta su determinación de "presunción de donación" debido al hecho de que la propiedad adquirida por la recurrente de la corporación El Paraíso Properties, Inc. —como dación en pago— por la suma de $750,000 tenía un *valor* de $3,057,000, precio por el cual la había adquirido "El Paraíso" en subasta pública.

La citada posición encuentra apoyo temporero en las disposiciones de las Secs. 881 y 5211 del Título 13 de las Leyes de Puerto Rico Anotadas.

La Sec. 881, *en lo pertinente*, dispone que:

(a) El término "donación" incluye la donación puramente graciosa, la onerosa y la remuneratoria, según las define el Código Civil de Puerto Rico.

Cuando una propiedad se transfiere por menos de su justo valor bien por dinero, su equivalente en dinero, o mediante permuta, el exceso del justo valor de dicha propiedad sobre el valor del dinero, del equivalente en dinero o de la cosa por la cual se transfiere dicha propiedad, se considerará una donación y se incluirá al computar el total de las donaciones hechas durante el año.

También es donación la transferencia expresada en el párrafo anterior de esta sección cuando dicha transferencia se hace mediante el cumplimiento o la liquidación por una

---

[3] La referida escritura, igualmente, se encuentra pendiente de inscripción.

parte de la responsabilidad u obligación de una segunda parte para con una tercera, o por cualquier otro medio.

Por otra parte, la Sec. 5211 prescribe que:

Cuando una propiedad sea transferida por menos de su valor se incluirá en el monto de las donaciones la cantidad que resulte ser la diferencia entre el valor de la propiedad y el precio, en dinero o su equivalente, pagado por la misma. Para los fines de este Capítulo el donante será el cedente de la propiedad y el donatario el adquirente de ésta, según lo prescrito en este apartado. En tales casos el cedente vendrá obligado a probar con prueba fehaciente que el precio de venta era el justo valor en el mercado de la propiedad a la fecha de la transacción.

¿Significa ello que en toda transacción en que se transfiere una propiedad por menos de su justo valor está envuelta una donación? No necesariamente; veamos.

El Art. 558 de nuestro Código Civil, 31 L.P.R.A. sec. 1981, dispone que: "La donación es un *acto de liberalidad* por el cual una persona dispone *gratuitamente* de una cosa en favor de otra que la acepta." (Énfasis suplido.)

Ante situaciones de hechos en que en el pasado hemos tenido que resolver si en determinada transacción ha habido una donación hemos expresado, en armonía con lo dispuesto por el transcrito Art. 558, que el requisito principal y básico de la donación es la liberalidad, y que para que una transacción realizada se considere donación deben mediar dos circunstancias, a saber: 1— intención de beneficiar al "deudor", donde la intención de donar es predominante, y 2— ausencia de causa, en que la causa es meramente nominal o insustancial. *Consolidated Cigar* v. *Registrador*, 83 D.P.R. 751, 755 (1961).

En *Nieto* v. *Registrador*, 91 D.P.R. 679 (1965) —caso en que rechazamos la contención del Registrador de que había envuelta una donación a pesar de que la propiedad en controversia había sido transferida por menos de su justo valor— resolvimos que las prestaciones recíprocas no

tienen necesariamente que ser exactamente iguales; que todo cuanto se requiere es que la transacción sea legítima, el resultado propio de una negociación, y que no evidencie la intención de gratificar o donar; y que —citando a Mertens(4)— la larga historia de la interpretación administrativa sostiene, en efecto, que no es necesario un escrutinio sobre la existencia de una causa completa y adecuada cuando la transferencia ocurre como resultado de una transacción en el curso ordinario de los negocios.

Con los mencionados principios en mente, los cuales reafirmamos en el día de hoy, examinemos los hechos del presente caso. No hay duda de que, en primera instancia, resulta impresionante que una propiedad que es adquirida en subasta pública el 5 de febrero de 1981 por la suma de $3,057,000 sea transferida, como dación en pago, por la suma de $750,000 el 20 de mayo de 1981 y que el último adquirente, el 10 de diciembre de 1981, a su vez la transfiriera por la suma de $1,290,000. Esos datos, por sí solos, causan la impresión de que efectivamente hubo una donación.

No empece lo anteriormente expresado, un examen de todas las circunstancias que rodearon la mencionada segunda transacción y de los documentos complementarios que acompañara la recurrente con su escrito de recalificación, nos convence de que en dicha transacción hubo una causa adecuada, que la transferencia de la propiedad ocurrió como resultado de una transacción realizada en el curso ordinario de los negocios y que el "cedente" de la propiedad no tuvo la intención de donar la misma. Nos explicamos.

En casos de financiamiento permanente el principal de la hipoteca usualmente es inferior al valor en el mercado del inmueble que está sujeto a dicha hipoteca. *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136 (1976). Ahora bien,

---

(4) J. Mertens, *The Law of Federal Gift and Estate Taxation*, Saugerties, New York, Lofit Publications, 1959, Vol. 5, Sec. 34.18, pág. 96.

por diversas razones, el valor en el mercado de un inmueble, en determinado momento, puede ser inclusive inferior al principal de la hipoteca a que está afecto.

En el caso que nos ocupa tenemos una situación particular: se trata de una hipoteca constituida en garantía de un "préstamo interino de construcción" o del caso de un "financiamiento interino", con la situación especial de que no se termina dicha construcción, el edificio queda abandonado por el término de casi seis años y, cuando finalmente se celebra la subasta pública con la correspondiente adjudicación, el edificio en cuestión está en tal estado de abandono que ha sido declarado "estorbo público". Obviamente, el valor de dicha propiedad en el mercado en ese momento era mucho menor al precio de adjudicación en la subasta de $3,057,000.

■ Por otro lado, nos parece igualmente correcto el señalamiento a los efectos de que con toda probabilidad el precio acordado de $750,000, en la transacción sobre dación en pago, tampoco representa el valor del inmueble en el mercado en el momento que se lleva a cabo la mencionada transacción. Entendemos, sin embargo, que ello no se debió a una "intención de donar" por parte de El Paraíso Properties, Inc.; recordemos que en ese momento la recurrente Senior Las Marías Corp. —corporación integrada por los acreedores asegurados preferentes de la corporación de la que El Paraíso Properties, Inc. era subsidiaria— está negociando desde una "posición de fuerza" o de privilegio frente a otra corporación (Continental Mortgage Investors) que está envuelta en un procedimiento de quiebra. Entendemos, en síntesis, que a pesar de que el precio acordado obviamente beneficiaba a la adquirente —la recurrente—, el mismo no fue nominal ni insustancial ni nunca existió la intención de donar por parte de El Paraíso Properties, Inc., ya que esta corporación transfiere el inmueble, no por razón de liberalidad, sino siguiendo instrucciones de su corporación matriz, la cual, repetimos, interesaba resolver unas

deudas con acreedores asegurados preferentes. Nos parece que es obvia la conclusión de que la transferencia en controversia fue el producto o el resultado de una transacción en el curso ordinario de los negocios entre tres corporaciones, transacción que inclusive mereció la aprobación de un tribunal.

No hay duda, por último, de que en relación con esta situación la recurrente Senior Las Marías Corp. hizo un buen negocio y que Continental Mortgage Investors y su subsidiaria El Paraíso Properties, Inc., por el contrario, hicieron un mal negocio. Pero como se dijo en *Nieto* v. *Registrador*, supra, pág. 684, citando con aprobación un caso del Tribunal de Contribuciones de los Estados Unidos: "En las esferas mercantiles todos los días, por una u otra razón, se hacen malos negocios, ventas por un valor inferior al del mercado o por menos de una causa adecuada, pero nadie osaría pensar que está envuelta una donación, aun considerando el concepto más amplio posible de este término."

■ *Se revocará la nota recurrida y se ordenará la inscripción.* (⁵)

---

(⁵) En vista del resultado arriba expresado, se hace innecesario el discutir los otros dos señalamientos que hace la recurrente Senior Las Marías Corp. No obstante esto, entendemos procedente expresar, respecto al señalamiento del apartado C, lo siguiente:

El Art. 71 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2274), en lo pertinente dispone que:

"Si recibida la solicitud de recalificación el Registrador decidiere mantener su calificación original, *dentro de un término de 30 días denegará la inscripción solicitada*, extendiendo en su lugar anotación preventiva sobre la finca afectada, en la cual expresará los motivos legales para tal anotación. . . ." (Énfasis suplido.)

En el presente caso, la parte recurrente radicó el escrito de recalificación el 12 de abril de 1982. El registrador recurrido notificó la reafirmación de su denegatoria con fecha del 9 de julio de 1982; o sea, se tomó ochentiocho (88) días para así hacerlo. Argumenta la recurrente que transcurrido el término de treinta (30) días que establece el citado Art. 71 de la Ley Hipotecaria, el registrador recurrido no tenía facultad para denegar la inscripción y que "sólo le quedaba la alternativa de inscribir".

No tiene razón. El referido término de treinta (30) días no es, ni puede ser,

---

fatal; dicho término es de carácter directivo. Véase: *Algarín* v. *Registrador*, 110 D.P.R. 603 (1981).

Advertimos, sin embargo, que ello no releva a los señores registradores de la propiedad de su obligación de hacer un esfuerzo máximo por cumplir con el referido término. Debe tenerse presente que el Art. 66.3 del Reglamento crea, en casos de incumplimiento del citado término, un procedimiento de queja ante el registrador en controversia y, en caso necesario, ante el Director Administrativo del Registro de la Propiedad, para que éste lleve a cabo la investigación que corresponda.