EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Centro de Recaudaciones de Ingresos Municipales<br><br>Peticionario<br><br>v.<br><br>Hon. Lourdes M. Bobé Santiago, Registradora de la Propiedad de la Sección de Humacao<br><br>Recurrida | 2015 TSPR 137<br><br>193 DPR ____ |

Número del Caso: RG-2015-1

Fecha: 14 de octubre de 2015

Tribunal de Apelaciones:

       Región Judicial de Guayama

Abogado del Peticionario:

       Lcdo. Ángel X. Viera Vargas

Oficina de la Procuradora General:

       Lcda. Margarita Mercado Echegaray
       Procuradora General

       Lcda. María A. Hernández Martín
       Procuradora General Auxiliar

Materia: Derecho Registral – Término para calificar escritura en espera de documentos complementarios requeridos.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro de Recaudación de Ingresos Municipales

     Peticionario

       v.

Hon. Lourdes M. Bobé Santiago, Registradora de la Propiedad de la Sección de Humacao

     Recurrida

RG-2015-0001

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 14 de octubre de 2015.

El Centro de Recaudación de Ingresos Municipales ("CRIM") nos solicita que ordenemos a la Hon. Lourdes M. Bobé Santiago, Registradora ("Registradora"), la calificación de una escritura pública. Debido a que no nos encontramos ante una calificación final, ni ante una verdadera negativa a calificar, procede desestimar el recurso por falta de jurisdicción.

I.

El CRIM argüye que Intel Puerto Rico Inc., otorgó la Escritura número 6 de 11 de mayo de 1995

sobre *Cancelación de Condiciones Restrictivas, Segregación, Permuta y Agrupación* ("Escritura núm.6") ante el notario Esteban R. Bengoa Becerra, mediante la cual, entre otras cosas, agrupó las fincas 9,316, 9,318, 9,322, 9,323, 9,324, 9,325 y 9,625. Según alegado, la Escritura núm. 6 fue presentada en el Registro de la Propiedad el 1 de agosto de 2000. Aunque esta Escritura es el eje central de la controversia ante nos, no fue anejada como parte del Recurso Gubernativo.

Posteriormente, y como parte de una transacción con una de sus entidades afiliadas, Intel Puerto Rico, Inc., transfirió el dominio de las fincas agrupadas a Intel Puerto Rico, Ltd. Luego de esta transferencia de dominio, Intel Puerto Rico, Ltd. vendió las fincas a IATG Puerto Rico, LLC ("IATG") mediante la Escritura de compraventa número 28 de 10 de octubre de 2003 ante la notaria Doira Díaz Rivera.[1] Recurso Gubernativo, pág. 4. Para poder inscribir en el Registro de la Propiedad el título que se alega que IATG ostenta, el principio de tracto exige la inscripción previa de la Escritura núm. 6 presentada por Intel Puerto Rico, Inc.

El 22 de diciembre de 2011, el CRIM presentó ante el Tribunal de Primera Instancia, Sala Superior de Humacao, una acción en cobro de contribuciones sobre la propiedad inmueble en contra de IATG, en relación a las fincas

---

[1] Contrario a lo expuesto por el CRIM, de ese instrumento público no surge de forma diáfana que se haya transferido el título de la finca 9,327 a IATG. Apéndice, págs. 24-27.

registrales 9,316, 9,318, 9,322, 9,323, 9,324, 9,325, 9,327, 9,625, 9,987-A, 10-210 y 11-409. Posteriormente, las partes suscribieron una *Solicitud de Sentencia por Estipulación* en la que IATG consintió a la venta en pública subasta de las fincas para satisfacer el pago de la deuda por concepto de impuestos sobre la propiedad inmueble. Apéndice, págs. 57-60. El tribunal acogió la solicitud de estipulación presentada por las partes, e impartió una sentencia que es final y firme. Apéndice, págs. 61-62.

El CRIM plantea que se reunió con la Registradora, a través de uno de sus representantes legales, para inquirir sobre el estatus de la calificación de la Escritura núm. 6. El CRIM le dio seguimiento a esa reunión a través de una carta con fecha de 2 de octubre de 2014. Apéndice, págs. 70-71. En dicha carta, el CRIM esbozó que "[n]uestro asesor legal externo nos informa haber tenido una productiva reunión con usted el pasado 26 de agosto [de 2014], donde le expresó que calificaría la escritura de epígrafe a la brevedad posible". Apéndice, pág. 71. Posteriormente, el CRIM envió una segunda misiva en la que expuso esencialmente lo mismo. Apéndice, pág. 72. En respuesta a esa segunda misiva, la Registradora se comunicó telefónicamente con el Director Ejecutivo del CRIM. Según alegado, en ese intercambio la Registradora informó sobre su "negativa a calificar" la Escritura núm. 6. Apéndice, págs. 73-74. No obstante, y sin especificar el momento, el CRIM alega igualmente que la Registradora le informó a su

Subdirector Ejecutivo que la Escritura núm. 6 **podría** adolecer de "defectos subsanables", tales como la falta de documentos complementarios. (Énfasis suplido) <u>Recurso Gubernativo</u>, pág. 5 n.15.

En vista de los obstáculos para inscribir la Escritura núm. 6, la Registradora le recomendó al Director Ejecutivo del CRIM ejecutar la hipoteca legal tácita que grava las fincas. Finalmente, el 6 de febrero de 2015, el CRIM presentó un Recurso Gubernativo ante este Tribunal.

II.

A.   El Art. 76 de la Ley Hipotecaria dispone que "[t]odo interesado podrá recurrir ante el Tribunal Supremo de Puerto Rico contra la **calificación final** del documento hecha por el Registrador denegando el asiento solicitado". (Énfasis suplido) 30 LPRA sec. 2279. En su escrutinio, este Tribunal examinará "la existencia o no de las faltas aducidas". (cita omitida) <u>Acosta v. Registrador</u>, 159 DPR 626, 631 (2003).

El ámbito de calificación del Registrador se encuentra delimitado por el Art. 64 de la Ley Hipotecaria, 30 LPRA sec. 2267. Ese artículo dispone que la calificación comprenderá "las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, los asientos registrales vigentes y las leyes". <u>Íd.</u>; véase

además Rigores v. Registrador, 165 DPR 710, 720 (2005). En el desempeño de su función calificadora, el Registrador dispone de un plazo para calificar que se encontraba dispuesto originalmente en el Art. 52 de la Ley Hipotecaria, 30 LPRA sec. 2255.

El término impuesto por la Ley Hipotecaria constaba de sesenta días contados a partir de la presentación del instrumento público ante el Registro de la Propiedad. Íd. El Reglamento para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad Núm. 2674 ("Reglamento Hipotecario Núm. 2674"), Departamento de Justicia, 9 de julio de 1980, según enmendado, disponía que en el caso de incumplimiento con dicho plazo para calificar, se podía presentar una queja contra el Registrador y, en caso de ser necesario, ante el Director Administrativo del Registro de la Propiedad ("Director Administrativo"). Véase L. R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra ed., San Juan, Ed. Jurídica Editores, 2012, págs. 276-277. Ese procedimiento permitía al Director Administrativo investigar y tomar la acción pertinente en torno a una tardanza por el registrador que se estime injustificada, como por ejemplo, ordenarle al Registrador tomar la acción correspondiente. Véase Reglamento Hipotecario Núm. 2674, supra, Art. 66.3, pág. 29. Por analogía, en cuanto al plazo para recalificar, hemos señalado el mismo remedio reglamentario. SLG Pérez Rivera v. Registradora, 189 DPR

729, 740-741 (2013); véase además Algarín v. Registrador, 110 DPR 603, 609 n.2 (1981).

Ahora bien, el 27 de diciembre de 2010 se aprobó la Ley Núm. 216-2010, 30 LPRA sec. 1821 et seq., con el fin de alivianar el atraso en la inscripción de títulos en el Registro de la Propiedad. Se desprende de su Exposición de Motivos que se tomó la determinación extraordinaria de inscribir por fíat legislativo ciertos títulos que pendían en el Registro de la Propiedad con el fin de brindarle certeza al tráfico jurídico. Exposición de Motivos, Ley Núm. 216-2010, supra. Cónsono con el ánimo de agilizar el procedimiento de inscripción en el Registro de la Propiedad, la Ley Núm. 216-2010 estableció en su Art. 5, 30 LPRA sec. 1824, un **"plazo improrrogable"** de dos años contados a partir de su vigencia para calificar los documentos que no quedaron inscritos mediante su operación, tales como aquellos que contenían segregaciones y agrupaciones. Art. 2, Ley Núm. 216-2010, supra. Además, dispuso de un "plazo improrrogable" de noventa días para calificar los documentos presentados a partir del 1ero de mayo de 2010. Como remedio ante el incumplimiento del Registrador con los términos anteriormente expuestos, el legislador solo dispuso un remedio reglamentario.[2]

---

[2] Un examen del historial legislativo de la Ley Núm. 216-2010, supra, revela que la versión original presentada en la Asamblea Legislativa del P. de la C. 2683 no contenía el término "improrrogable" al referirse al plazo no mayor de dos años que tendrían los Registradores para calificar los documentos que no quedaron inscritos automáticamente. Según consta en el informe de la Comisión de Asuntos de lo

El Reglamento del Departamento de Justicia para la ejecución de la Ley Núm. 216 de 27 de diciembre de 2010 Núm. 7988 de 4 de febrero de 2011, dispone de un mecanismo de fiscalización que emula sustancialmente al dispuesto por el antiguo Reglamento Hipotecario Núm. 2674. Así, ante el incumplimiento del Registrador con el término para calificar dispuesto en la Ley Núm. 216-2010, el **único remedio para la parte interesada en la inscripción** es requerirle por escrito al Registrador que cumpla con el plazo para calificar. Véase Reglamento Núm. 7988, supra, Art. 10, págs. 6-7. El Registrador tendrá treinta días, a partir del recibo del requerimiento, para cumplir con el término aplicable. Si el Registrador no ha cumplido luego de haber sido requerido por escrito, el Reglamento Núm. 7988 provee también para que el Director Administrativo o la parte interesada en la inscripción, presente una querella ante un funcionario designado para ello. Íd., pág. 7. **Nada se dispuso en cuanto los efectos que ese incumplimiento y las posibles sanciones disciplinarias tendrían sobre el documento presentado para calificación.** Véase L. R. Rivera Rivera, op. cit., pág. 277. Del

Jurídico y de Ética de la Cámara de Representantes, ese término fue añadido como parte del proceso legislativo a sugerencia de la Asociación de Notarios. Informe de la Comisión de Asuntos de lo Jurídico y de Ética de la Cámara de Representantes, pág. 7. Ante esa sugerencia, el Departamento de Justicia no tuvo objeción, pero sugirió que se incluyera en el mismo Art. 5 que los registradores solo podrían ser sancionados cuando incumplieran con los referidos términos por razones únicamente atribuibles a ellos. Esas dos sugerencias fueron acogidas por la Asamblea Legislativa.

historial legislativo tampoco surge que la intención del legislador fuera que la tardanza en calificar tuviera algún efecto sobre el documento presentado. Al contrario, el historial refleja que el legislador presumió que el plazo concedido por el Art. 5 de la Ley Núm. 216-2010, supra, era suficiente para poner al día el Registro de la Propiedad. Informe de la Comisión de Asuntos de lo Jurídico y de Ética de la Cámara de Representantes, pág. 19. Por eso, no podemos, por fíat judicial, decretar que el documento quedó inscrito automáticamente por el mero transcurso del término improrrogable que estableció el legislador. Es decir, ante el incumplimiento con el plazo para calificar, corresponde al Director Administrativo tomar la acción correspondiente.

B.   De hecho, siempre hemos expuesto que el mero paso del tiempo tampoco faculta a una parte interesada en la inscripción a presentar un recurso gubernativo. Véase, SLG Pérez Rivera v. Registradora, supra; Algarín v. Registrador, 110 DPR 603 (1981).

Sin embargo, en instancias donde el Registrador se ha negado a calificar expresamente, hemos utilizado el recurso gubernativo, para ordenarle que cumpla con su deber. Indicamos entonces que "[l]a negativa del Registrador a calificar es materia típica de la jurisdicción gubernativa, porque esa negativa, bien o mal fundada, en efecto cierra el Registro a la parte interesada en la inscripción, el mismo desenlace de la denegatoria y la suspensión". Hous. Inv. Corp. v. Registrador, 110 DPR 490, 500 (1980).

En esas instancias notamos la actuación peculiar del Registrador de, por ejemplo, enviar una nota negándose expresamente a calificar y de suspender la calificación hasta la subsanación de un defecto en un documento independiente. Véanse: Hous. Inv. Corp. v. Registrador, supra, págs. 498-499 (mediante una nota emitida, se suspendió la calificación de una escritura de venta judicial hasta tanto se subsanara un defecto en la anotación preventiva de demanda que culminó en la venta judicial descrita en la escritura); Castro Lund v. Registrador, 102 DPR 295, 301-303 (1974) (discute los casos en los que el Registrador emitió notas negándose como cuestión de hecho a inscribir); Rivera v. Registrador, 74 DPR 127, 132 (1952) (se devolvieron los documentos presentados junto a una nota negándose a realizar operación alguna en el Registro); Autoridad de Fuentes Fluviales v. Registrador, supra, pág. 849 (se devolvieron los documentos presentados junto a una nota negándose a realizar operación alguna en el Registro). El denominador común en los casos citados es la **abdicación manifiesta** del Registrador de su razón de ser, la calificación de documentos. Esto contrasta con los casos en los que rechazamos intervenir porque no existía una verdadera negación a practicar una operación registral, sino, un incumplimiento con el plazo para llevar a cabo la función en cuestión. Véanse, SLG Pérez Rivera v. Registradora, supra; Senior Las Marías Corp. v.

Registrador, 113 DPR 675, 683 n.5 (1982); Algarín v. Registrador, supra.

Los dictámenes ordenando a los registradores a calificar instrumentos públicos, tienen como fin el que estos cumplan con su deber de calificar los documentos que se presentan ante el Registro de la Propiedad. Art. 64, Ley Hipotecaria, 30 LPRA sec. 2267. No obstante, debemos resaltar que este Tribunal no supervisa el funcionamiento interno del Registro de la Propiedad; esa competencia recae sobre el Secretario de Justicia. Art. 2, Ley Hipotecaria, 30 LPRA sec. 2001; véase además E. Vázquez Bote, Derecho Inmobiliario Registral II, New Hampshire, Ed. Butterworth Legal Publishers, 1992, Vol. XV, pág. 344. Consecuentemente, ante un caso en donde se alegue una negativa a calificar deberá dirimirse si, en efecto, el Registrador se ha negado a calificar o si en realidad se trata de una demora en el proceso de calificación, pues no podemos inmiscuirnos indebidamente en el funcionamiento interno del Registro de la Propiedad.

III.

En este caso, del propio alegato del CRIM se desprende que no existe una calificación final, expresa o implícita, que podamos revisar. Aunque el CRIM nos describió una alegada negativa a calificar por parte de la Registradora, también nos señaló que la Registradora le informó que la Escritura núm. 6 podría adolecer de documentos complementarios, falta que impide su inscripción. Art. 68,

Ley Hipotecaria, 30 LPRA sec. 2271. A dicha alegación debemos añadirle que la Registradora se mostró dispuesta a reunirse con la representación legal del CRIM para discutir la calificación de la escritura en cuestión.

En otras palabras, no estamos ante una negativa a calificar con carácter de calificación final y que para todos los efectos prácticos cierre el Registro a la parte interesada. Regla 27(a) de nuestro Reglamento, 4 LPRA Ap. XXI-B R.27(a). Más bien, el cuadro fáctico nos lleva a concluir que en realidad estamos ante una tardanza en el proceso de calificación. Dicho de otra forma, el proceso de calificación del instrumento público en cuestión, la Escritura núm. 6, luego de 15 años aún no ha concluido. En contraste con la jurisprudencia pertinente, en este caso no surge del expediente que la Registradora haya devuelto el instrumento público que debe calificar ni tampoco que haya emitido una nota de naturaleza alguna que sugiera la negación del asiento solicitado en la Escritura núm. 6. Todo lo contrario. Se desprende de las propias alegaciones de la peticionaria que la Registradora se reunió y se comunicó en varias instancias con el CRIM durante el proceso de calificación. Además, debemos recordar que las cartas enviadas por el CRIM hacen alusión expresa a que la Registradora informó durante la reunión que sostuvo con la representación legal del CRIM, que "calificaría la escritura de epígrafe a la brevedad posible". Apéndice, págs. 71,72. Por lo tanto, no podemos concluir que nos

encontramos ante una calificación final, expresa o implícita, que habilite nuestra jurisdicción gubernativa.

No podemos inferir de forma alguna que el mero paso del tiempo creó un derecho a recurrir ante este Tribunal. De hecho, presumir que el mero paso del tiempo, o la violación del plazo improrrogable para calificar de la Ley Núm. 216-2010, supra, configuran una denegación tácita de un asiento registral plantea más problemas que soluciones. Primeramente, nos subrogaríamos en la posición de supervisores de un componente de la Rama Ejecutiva, facultad que no tenemos. Véase E. Vázquez Bote, op. cit., Vol. XV, pág. 344. Además, tendríamos la tarea de definir cuánto tiempo es suficiente para calificar un instrumento público en el Registro de la Propiedad. Es precisamente para atender eso, que nuestra jurisprudencia ha requerido un acto manifiesto para suponer una denegatoria implícita de un asiento registral.

Somos conscientes de las implicaciones que tiene en el tráfico jurídico y comercial el que un instrumento público permanezca años en el Registro de la Propiedad sin calificar. No obstante, nada en nuestro ordenamiento nos permite interferir con la labor de la Registradora cuando no ha habido actuación alguna que nos permita concluir que esta ha abdicado a su deber personalísimo: la calificación de instrumentos públicos. Como vimos, existe un mecanismo para evitar que un instrumento público permanezca inmóvil en el Registro de la Propiedad. Ahora bien, corresponde a

las otras dos ramas constitucionales determinar la efectividad de ese remedio en base a la experiencia y modificarlo de entenderlo necesario.

Según discutido en la sección anterior, el marco jurídico únicamente le permite al CRIM requerirle por escrito a la Registradora que cumpla con el término estatutario para calificar la Escritura núm. 6. En caso de inacción por parte de la Registradora luego del requerimiento escrito, el CRIM tendrá a su disposición la posibilidad de presentar una querella ante el funcionario designado a esos efectos por el Secretario de Justicia. Esa fue la voluntad legislativa al diseñar el Registro de la Propiedad, la cual hasta el día de hoy, no ha cambiado. La propia Ley Hipotecaria en su Art. 65, 30 LPRA sec. 2268, establece que, salvo los casos en donde proceda el recurso gubernativo **contra una calificación**, los tribunales no podemos en distinta forma obligar o impedir a los registradores a practicar operación registral alguna. Así, por ejemplo, hace más de un siglo establecimos que no procede un recurso de <u>mandamus</u> para obligar a un registrador a inscribir un documento en el registro. <u>Cividanes v. Registrador de la Propiedad</u>, 11 DPR 271 (1906). Por consiguiente, y en vista de lo anteriormente discutido, la intervención de este Tribunal, de acuerdo a los hechos de este caso, estaría a destiempo.

IV.

Por los fundamentos antes expuestos, se desestima el presente Recurso Gubernativo por falta de jurisdicción.



                              Rafael L. Martínez Torres
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro de Recaudación de
Ingresos Municipales

     Peticionario

       v.

Hon. Lourdes M. Bobé
Santiago, Registradora de la
Propiedad de la Sección de
Humacao

     Recurrida

RG-2015-0001

Sentencia

En San Juan, Puerto Rico, a 14 de octubre de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se desestima el presente Recurso Gubernativo por falta de jurisdicción.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Oronoz Rodríguez disiente con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro de Recaudación de Ingresos Municipales

       Peticionario

          v.                    RG-2015-1

Hon. Lourdes M. Bobé Santiago, Registradora de la Propiedad de la Sección de Humacao

       Recurrido

Opinión Disidente emitida por la Jueza Asociada Oronoz Rodríguez

En San Juan, Puerto Rico, a 14 de octubre de 2015.

Cuando transcurren 15 años y la Registradora de la Propiedad no califica un documento, no se trata de una mera demora, sino -*de facto*- de una denegatoria a calificar. En tales circunstancias, este Tribunal tiene jurisdicción para intervenir y ordenarle a la Registradora que califique el documento. Como una mayoría de este Tribunal resuelve de otra forma, disiento.

I

Mediante este Recurso Gubernativo el Centro de Recaudación de Ingresos Municipales (CRIM) nos solicita que le ordenemos a la Registradora

de la Propiedad de la Sección de Humacao, la Hon. Lourdes M. Bobé Santiago (Registradora), calificar la Escritura núm. 6 de 11 de mayo de 1995 sobre Cancelación de Condiciones Restrictivas, Segregación, Permuta y Agrupación (Escritura núm. 6). Ésta fue otorgada por Intel Puerto Rico, Inc. ante el notario Esteban R. Bengoa Becerra y se presentó al Asiento 127 del Diario de Operaciones 736 del Registro de la Propiedad (Registro), Sección de Humacao, **el 1 de agosto de 2000**.

Una mayoría de este Tribunal desestima el recurso gubernativo por falta de jurisdicción al concluir que "no estamos ante una negativa a calificar con carácter de calificación final y que para todos los efectos prácticos cierre el Registro a la parte interesada".[3] Aun reconociendo que después de 15 años todavía la Registradora no ha calificado la Escritura núm. 6, la mayoría remite al CRIM a un procedimiento administrativo para que ventile ahí su reclamo.

Según el Reglamento Núm. 7988,[4] dicho procedimiento conlleva que el CRIM le requiera por escrito a la Registradora que cumpla con el término aplicable para calificar en un plazo no mayor de 30 días.[5] Reglamento Núm. 7988, _supra_, págs. 6-7. En caso de que ésta no actúe, el

---

[3] Opinión mayoritaria, pág. 10.

[4] Reglamento para la ejecución de la Ley Núm. 216 de 27 de diciembre de 2010, conocida como Ley para Agilizar el Registro de la Propiedad, Reglamento Núm. 7988, Departamento de Justicia, 4 de febrero de 2011, págs. 6-7.

[5] En este caso, el CRIM le envió dos cartas a la Registradora -el 2 de octubre de 2014 y el 10 de noviembre de 2014- para indagar sobre el estatus de la calificación de la Escritura núm. 6 y señalar la importancia de dicha gestión.

CRIM podrá presentar una querella ante un funcionario designado por el Secretario de Justicia. Íd., pág. 7. Según la Ley Núm. 216-2010, denominada Ley para Agilizar el Registro de la Propiedad (Ley Núm. 216), el Registrador será sancionado disciplinariamente sólo cuando el incumplimiento con los plazos se deba a razones atribuibles únicamente a su conducta. 30 LPRA sec. 1824.[6] Es evidente que dicho procedimiento es uno disciplinario que no tiene ningún efecto sobre el documento presentado para calificación. L. R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 277.

La Opinión mayoritaria cita varios casos para demostrar que este Tribunal se ha negado a intervenir con el Registrador cuando éste meramente se demora en el proceso de calificación. En cuanto a dichos casos, entiendo pertinente señalar que el tiempo que transcurrió en el proceso de calificación no se compara con el que tenemos ante nuestra consideración. A saber, en SLG Pérez Rivera v. Registradora, 189 DPR 729 (2013) la Registradora se demoró más de 5 meses en atender el escrito de recalificación; en Senior Las Marías Corp. v. Registrador, 113 DPR 675 (1982),

---

[6] Por otro lado, el Art. 66.3 del Reglamento general para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad disponía que si el Registrador incumplía con los términos para calificar, el interesado podía presentar una queja contra éste y de ser necesario ante el Director Administrativo. El Director Administrativo haría una investigación y ordenaría al Registrador a tomar la acción que correspondiera, de no existir causa justificada para la tardanza. Si el Registrador no realizaba lo ordenado, el Director Administrativo se lo informaría al Secretario de Justicia, el cual impondría las medidas correctivas pertinentes mediante el procedimiento de jurisdicción disciplinaria establecido. Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad Núm. 2674, Departamento de Justicia, 9 de julio de 1980, según enmendado.

el Registrador se tardó 88 días en atender dicho escrito; y en Algarín v. Registrador, 110 DPR 603 (1981), el Registrador notificó un defecto, la parte lo objetó el 3 de julio de 1980 y, al no tener respuesta del Registrador, interpuso un Recurso Gubernativo el 4 de octubre de 1980, es decir cuando habían transcurrido 3 meses. Ninguno se compara al término transcurrido en este caso.

A diferencia de lo expuesto por la Opinión mayoritaria, considero que nos encontramos ante una denegatoria de la Registradora a calificar el documento presentado. Me parece improcedente catalogar un término de **15 años** como una tardanza o demora en calificar. Máxime cuando la Ley Núm. 216 estableció un plazo improrrogable de 2 años para calificar los documentos que no quedaran inscritos automáticamente en virtud de dicha Ley. Ese término se estableció, entre otras cosas, para evitar que se notifiquen faltas 10 o 15 años después de la presentación del documento, las cuales no se puedan resolver sin que el notario o la parte interesada incurran en gastos adicionales por el tiempo que ha transcurrido. Exposición de Motivos de la Ley Núm. 216-2010.

El recurso gubernativo presentado por el CRIM es el mecanismo correcto para defender su interés. Hemos expresado que procede un recurso gubernativo cuando el Registrador se niega a calificar el documento presentado, ya que ésta "es la más radical y absoluta forma de denegar o suspender la inscripción [...] [y] esa negativa, bien o mal fundada, en efecto cierra el Registro a la parte

interesada en la inscripción [...]". <u>Housing Inv. Corp. v.</u> <u>Registrador</u>, 110 DPR 490, 500 (1980). Véase <u>Autoridad de</u> <u>Fuentes Fluviales de P.R. v. Registrador</u>, 71 DPR 847, 850 (1950); <u>Sucesión Franceschi v. Registrador</u>, 39 DPR 736, 743 (1950). Asimismo, resolvimos que procede el recurso ante una nota del Registrador que como cuestión de hecho deniegue la inscripción, aunque no surja expresamente de la misma. <u>Housing Inv. Corp. v. Registrador</u>, <u>supra</u>, pág. 500. Ante dichas expresiones se puede concluir que no hace falta necesariamente una expresión manifiesta por parte del Registrador denegando la calificación del documento para que este Tribunal intervenga. Tal y como reconoce el profesor Luis Rafael Rivera Rivera, lo anterior conlleva ciertas dificultades ya que cuando no se esté ante un caso en el cual el Registrador expresamente se haya negado a calificar pudiera ser difícil precisar si éste se ha negado o si estamos ante una demora. L. R. Rivera Rivera, <u>Derecho</u> <u>Registral Inmobiliario Puertorriqueño</u>, <u>op. cit.</u>, pág. 277. Sin embargo, el hecho de que haya alguna dificultad no puede ser impedimento para actuar y ofrecerle un remedio a la parte que espera por que se califique su documento. Debemos, pues, verlo caso a caso.

Reconozco que en este caso no hay un documento del cual surja expresamente que el Registrador se negó a ejercer su deber.[7] No obstante, entiendo que cuando han

---

[7] Sin embargo, el CRIM expone en su Recurso Gubernativo que, luego de enviar la segunda carta, la Registradora llamó al Director Ejecutivo del CRIM y le informó de su negativa a calificar la Escritura núm. 6. Asimismo, le invitó a ejecutar la hipoteca legal tácita que grava las fincas. Recurso Gubernativo, pág. 7. A pesar de entender que en este caso el Registrador se negó a calificar al no realizar acto alguno en

transcurrido 15 años desde la presentación de un documento para su inscripción sin que el Registrador lo haya calificado, ello constituye una **abdicación manifiesta** de su deber y dicha actuación implica una denegatoria a calificar.[8] Siendo, pues, una denegatoria, se permite la presentación de un recurso gubernativo y la intervención de este Tribunal.

La negativa del Registrador a calificar crea incertidumbre e inestabilidad en el tráfico jurídico de bienes inmuebles, lesiona derechos de ciudadanos, afecta las transacciones comerciales y tiene un impacto real en el desarrollo económico del País. En el caso particular ante nos, la denegatoria de la Registradora a calificar la Escritura núm. 6 le impide al CRIM subastar las fincas para cobrar su acreencia.[9] Además, y según se alega, como consecuencia de la negativa a calificar -y ante la imposibilidad de venderlas en pública subasta- las fincas se han ido deteriorando debido al abandono en el que se encuentran, para detrimento de la agencia y del Municipio

---

15 años, la llamada de la Registradora demuestra de forma aún más tajante la situación de incertidumbre en la cual se encuentra el CRIM. Además, el CRIM indica que la solución que provee la Registradora no es viable en derecho porque la hipoteca legal tácita que se constituye en virtud de la Ley Hipotecaria es por el importe de las contribuciones correspondientes sólo a los últimos 5 años y el corriente, lo cual no alcanza la totalidad de la deuda que reclama el CRIM. Íd., págs. 7-8. 30 LPRA sec. 2651. Por otro lado, dicha solución tampoco atendería el problema de titularidad registral de las fincas en cuestión. Recurso Gubernativo, pág. 8.

[8] Cabe mencionar que para el mes de agosto de este año el Registro de la Propiedad, Sección de Humacao, tenía pendientes de calificar **31,910** documentos. Véase Informes Estadísticos del Registro de la Propiedad, Agosto 2015, http://www.justicia.pr.gov/home/informes-estadisticos/(última visita 1 de octubre de 2015).

[9] Recurso Gubernativo, pág. 6. Aunque el CRIM señala que está imposibilitado de subastar las fincas, en realidad no se trata de una imposibilidad en el sentido de que no puede venderlas, sino que pocos compradores van a arriesgar su dinero sobre unas fincas con posibles defectos sobre sus títulos.

de Las Piedras.[10] Asimismo, debido a que estamos ante un mandato del legislador que requiere que se califiquen los documentos en 2 años, el incumplimiento con dicho término contraviene la política pública que se quiso adelantar.

Puesto que "la calificación registral constituye la piedra angular del principio de legalidad",[11] así como un acto necesario que los Registradores están obligados a realizar,[12] procedería a ordenarle a la Registradora que cumpla con su deber y **califique** la Escritura núm. 6.[13] Bechara Fagundo v. Registradora, 183 DPR 610, 619 (2011); R & G Premier Bank P.R. v. Registradora, 158 DPR 241, 246 (2002); L. R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, op. cit., pág. 277. No debemos realizar una interpretación inflexible de la situación ante nosotros, con el efecto de negarle un remedio a una parte que claramente tiene derecho al mismo.


                              Maite D. Oronoz Rodríguez
                                   Jueza Asociada


---

[10] Íd., pág. 8.

[11] "El principio de legalidad es uno de los principios axiales del derecho hipotecario. Exige que los títulos que pretenden acceder al Registro de la Propiedad sean sometidos a un examen previo, verificación o calificación, de suerte que sólo puedan tener acceso a los libros hipotecarios los títulos válidos y perfectos." BL Investment v. Registrador, 173 DPR 833, 839 (2008).

[12] Huelga mencionar que la calificación de documentos es la función principalísima de un Registrador.

[13] En este caso, la denegatoria de la Registradora a calificar, en efecto, le cierra el Registro al CRIM por lo que constituye una denegatoria y procede que este Tribunal le ordene, no a inscribirlo, sino a calificar el documento.